**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINA**

**CLARKSBURG DIVISION**

WATERFRONT FAMILY PHARMACY LLC,

      Plaintiff,

      v.                                    CIVIL ACTION NO. 1:25-cv-00029-TSK

OPTUMRX, INC. et al.,

      Defendants.

## MEMORANDUM IN SUPPORT OF OPTUMRX, INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS

4915-0466-2846.8

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................................ 1

    A. The Parties .................................................................................................................. 1

    B. Plaintiff seeks and obtains admission into OptumRx's network and becomes bound to the Manual and Elevate PNA .................................................................................................. 2

    C. The Manual has a broad arbitration agreement and delegation clause. ..................... 4

    D. The Elevate PNA, as amended, has a broad, retroactive arbitration agreement and an expansive delegation clause. ........................................................................................... 6

    E. Plaintiff sues OptumRx for alleged underpayment as a network pharmacy. ............ 7

III. LEGAL STANDARDS ..................................................................................................... 8

IV. THE LAW GOVERNING THE ARBITRATION ANALYSIS. ...................................... 10

V. ARBITRATION OF ALL CLAIMS SHOULD BE COMPELLED. ................................ 10

    A. Both the Manual and the Elevate PNA have binding arbitration agreements. ......... 11

        i. The Manual's arbitration agreement is binding on Plaintiff. ............................... 11

        ii. The PNA's broad arbitration agreement is also binding on Plaintiff. .................. 14

    B. The parties delegated threshold questions of arbitrability, including unconscionability and the scope, to the arbitrator. ................................................................................................ 15

    C. Plaintiff's claims fall within the scope of the valid arbitration agreement. ............. 17

    D. Plaintiff's apparent unconscionability challenges are without merit. ...................... 17

        i. Neither the Manual nor the Elevate PNA is procedurally unconscionable. ......... 18

        ii. Neither the Manual nor the Elevate PNA are substantively unconscionable. ...... 19

VI. THE PRELIMINARY INJUNCTION MOTION BELONGS IN ARBITRATION. ........ 23

VII. CONCLUSION ................................................................................................................ 24

4915-0466-2846.8

# TABLE OF AUTHORITIES

**Federal Cases**

*Adkins v. Labor Ready, Inc.*,
  303 F.3d 496 (4th Cir. 2002) ...................................................................................... 9

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995)................................................................................................... 8

*Am. Gen. Life & Accident Ins. Co. v. Wood*,
  429 F.3d 83 (4th Cir. 2005) ................................................................................. 9, 18

*American Express Co. v. Italian Colors Restaurant*,
  570 U.S. 228 (2013).................................................................................................. 21

*Amos v. Amazon Logistics, Inc.*,
  74 F.4th 591 (4th Cir. 2023) ................................................................................... 24

*Arrowhead Global Sols., Inc. v. Datapath, Inc.*,
  166 F. App'x 39 (4th Cir. 2006) ............................................................................... 23

*Ashworth v. Five Guys Operations, LLC*,
  No. 3:16-06646, 2016 WL 7422679 (S.D. W. Va. Dec. 22, 2016) ...................... 9, 10

*Barach v. Sinclair Media III, Inc.*,
  392 F. Supp. 3d 645 (S.D. W. Va. 2019) ............................................................ 10, 23

*Carroll v. Belmont Park Entm't LLC*,
  No. 20-cv-01991-H-RBB, 2021 WL 134102 (S.D. Cal. Jan. 13, 2021)................... 18

*Carson v. Giant Foods, Inc.*,
  175 F.3d 325 (4th Cir. 1999) .................................................................................... 9

*Cherokee Nation v. OptumRx, Inc.*,
  No. 23-CV-259-RAW-GLJ, 2024 WL 2938495 (E.D. Okla. May 8, 2024) ............ 16

*Dillon v. BMO Harris Bank, N.A.*,
  856 F.3d 330 (4th Cir. 2017) .................................................................................... 21

*Diskriter, Inc. v. Alecto Healthcare Servs. Ohio Valley LLC*,
  No. 5:17CV170 (STAMP), 2018 WL 555720 (N.D. W. Va. Jan. 25, 2018)............ 23

*Frashuer v. Altice USA, Inc.*,
  No. 2:21-CV-17 (KLEEH), 2023 WL 195523 (N.D. W. Va. Jan. 17, 2023) ...... 11, 19

4915-0466-2846.8

*Galloway v. Priority Imps. Richmond, LLC*,
No. 20-1020, 2023 WL 1858387 (4th Cir. Feb. 9, 2023) ................................................. 9

*Gibbs v. Haynes Invs., LLC*,
967 F.3d 332 (4th Cir. 2020) ................................................................................................ 9

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ................................................................................................................ 20

*Hammerl v. Acer Europe, S.A.*,
No. C 08-4754 JF (RS), 2009 WL 30130 (N.D. Cal. Jan. 5, 2009) .......................................... 13

*Harris v. Equifax Info. Servs.*,
No. 2:18-cv-00558, 2019 WL 1714218 (S.D. W. Va. Apr. 17, 2019) ..................................... 17

*HealthPro Pharmacy & Wellness Center v. OptumRx Inc.*,
No. 3:24-cv-01878-N, 2025 WL 307696 (N.D. Tex. Jan. 27, 2025).......................................... 13

*Hellenic Inv. Fund, Inc. v. Det Norske Veritas*,
464 F.3d 514 (5th Cir. 2006) ................................................................................................ 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ......................................................................................................... 9, 15

*Hooters of Am., Inc. v. Phillips*,
173 F.3d 933 (4th Cir. 1999) ......................................................................................... 18, 20

*House v. Rent-A-Ctr. Franchising Int'l, Inc.*,
2016 WL 7394552 (S.D. W. Va. Dec. 21, 2016)...................................................................... 16

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GmbH*,
206 F.3d 411 (4th Cir. 2000) ................................................................................................ 12

*Johnson v. Opportunity Fin., LLC*,
No. 3:22cv190, 2023 WL 2636712 (E.D. Va. Mar. 24, 2023) .......................................... 20, 21

*Lawhun v. CMH Homes, Inc.*,
No. 1:22-CV-112, 2023 WL 5280909 (N.D. W. Va. Aug. 16, 2023) ....................................... 9

*Levin v. Alms & Assocs., Inc.*,
634 F.3d 260 (4th Cir. 2011) .................................................................................................. 6

*Mabe v. OptumRx*,
No. 3:17-CV-01102, 2024 WL 3498353 (M.D. Pa. July 22, 2024) .................................. 14, 18

*McCumbee v. M Pizza, Inc.*,
No. 3:22-CV-128, 2023 WL 2725991 (N.D. W. Va. Mar. 30, 2023) ....................................... 6

iii

*Meridian Imaging Sols., Inc. v. OMNI Bus. Sols., LLC*,
   250 F. Supp. 3d 13 (E.D. Va. 2017) ................................................................. 10

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*,
   756 F.2d 1048 (4th Cir. 1985) ........................................................................ 24

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coe*,
   313 F. Supp. 2d 603 (S.D. W. Va. 2004) ........................................................ 10

*Montgomery v. Applied Bank*,
   848 F. Supp. 2d 609 (S.D. W. Va. 2012) .................................................. 18, 23

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .............................................................................................. 8

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2017) ........................................................................ 19

*Preston v. Ferrer*,
   552 U.S. 346 (2008) ........................................................................................ 21

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ...................................................................................... 9, 16

*Rockwell Mining, LLC v. Pocahontas Land LLC*,
   726 F. Supp. 3d 567 (S.D. W. Va. 2024) ........................................................ 13

*Siler v. Chase Bank, USA, N.A.*,
   No. 3:08-CV-130, 2011 WL 13228390 (N.D. W.Va. June 13, 2011) ............... 21

*Smith v. Spizzirri*,
   601 U.S. 472 (2024) ........................................................................................ 24

*Trudeau v. Google LLC*,
   816 F. App'x 68 (9th Cir. 2020) ........................................................................ 6

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
   515 U.S. 528 (1995) .................................................................................. 20, 21

*Whiteside v. Teltech Corp.*,
   940 F.2d 99 (4th Cir. 1991) .............................................................................. 9

**State Cases**

*AAMH Pharm. Inc. v. OptumRx Inc.*,
   No. 56-2018-00515296-CU-AT-VTA, 2019 WL 13152208 (Cal. Super. Ct. Apr. 22, 2019) . 14

iv

4915-0466-2846.8

*Bayles v. Evans*,
   243 W. Va. 31, 842 S.E.2d 235 (W. Va. 2020) ................................................................ 12, 13

*Bryan v. Mass. Mut. Life Ins. Co.*,
   178 W. Va. 773, 364 S.E.2d 786 (1987) ................................................................................ 10

*Cimino v. Bed. Of Educ.*,
   158 W. Va. 267, 210 S.E.2d 485 (W. Va. 1974) ................................................................... 22

*Copper Bend Pharm., Inc. v. OptumRx*,
   No. 5-22-0211, 2023 WL 2964485 (Ill. App. Ct. Apr. 14, 2023) ........................................... 18

*Franco v. Greystone Ridge Condo.*,
   252 Cal. Rptr. 3d 149 (Cal. Ct. App. 2019) ......................................................................... 6, 7

**Federal Statutes**

9 U.S.C. § 2 ................................................................................................................................ 8

9 U.S.C. § 3 ................................................................................................................................ 9

**State Statutes**

W. Va. Code § 33-51-9(f) ....................................................................................................... 7, 8

W.Va. Code § 33-51-12(d) ........................................................................................................ 23

**Federal Rules**

Fed. R. Civ. P. 12(b)(3) ............................................................................................................ 24

**Other Authorities**

Restatement (Second) Conflict of Laws .............................................................................. 20, 21

4915-0466-2846.8

## I.    INTRODUCTION

Plaintiff Waterfront Family Pharmacy, LLC's ("Plaintiff") claims against OptumRx, Inc. ("OptumRx") are subject to valid and binding broad arbitration agreements between Plaintiff and OptumRx. Those written arbitration agreements—which Plaintiff admits exists—are integral to its participation as a retail pharmacy in a pharmacy network that OptumRx, a pharmacy benefits manager, established and administers. This case, including Plaintiff's newly-filed motion for a preliminary injunction, belongs in arbitration, not before this Court.

Plaintiff's apparent attempt to evade these binding arbitration agreements by arguing that the relevant contracts (from which it benefitted time and again) are unenforceable is unpersuasive. That challenge appears to be directed to the underlying contract as a whole, not the arbitration agreements specifically. Federal law, and the broad delegation provisions in the arbitration agreements, require that this Court refer all questions of arbitrability—including unenforceability—to the arbitrator. But even if this Court were to reach challenges to the enforceability of the arbitration agreement (and it should not), Plaintiff's challenge based on the choice of law provision for the overall agreement fails because the doctrine on which Plaintiff apparently relies in its Complaint applies to federal statutes only, not state statutes like the one involved here. And because nothing about arbitration generally, or the arbitration agreements or choice of law provision here, precludes Plaintiff from pursuing its state statutory claim in arbitration.

## II.    FACTUAL BACKGROUND

### A.  The Parties

OptumRx is a pharmacy benefits manager ("PBM"). As a PBM, OptumRx is retained by health plans to manage and facilitate a plan's pharmacy benefits. As such, it is hired by health plans to manage their pharmacy benefits and related drug spending and achieve better health

1

4915-0466-2846.8

outcomes for the members of those health plans. (Ex. 1, Decl., ¶ 3.) One way OptumRx does that is by establishing and maintaining a network of pharmacies where plan members can fill their prescriptions. (*Id.*)

Plaintiff is a retail pharmacy operating in West Virginia. (Compl. ¶ 1.) Plaintiff joined OptumRx's network on February 15, 2017, through the Elevate pharmacy services administrative organization ("PSAO").[1] (Ex. 1, Decl., ¶ 11.)

### B. Plaintiff seeks and obtains admission into OptumRx's network and becomes bound to the Manual and Elevate PNA.

OptumRx's pharmacy network provides pharmacy locations (like Plaintiff's) where members of OptumRx's health plan clients can get their prescriptions filled. (Ex. 1, Decl. ¶ 3.) When a network pharmacy fills a prescription for a member, the pharmacy submits a claim for that prescription to OptumRx, which adjudicates the claim consistent with the particular health plan's coverage terms and then pays the pharmacy according to the terms of its Provider Network Agreement ("PNA") with OptumRx. (*Id.*, ¶ 4.) OptumRx separately charges the appropriate health plan client for the claim. (*Id.*)

As part of administering its pharmacy network, OptumRx maintains and regularly updates its Provider Manual (the "Manual"), which sets out detailed rules that network pharmacies must follow in serving the members of OptumRx's health plan clients. (*Id.*, ¶ 10.) OptumRx communicates those Manual updates to network pharmacies by faxing update notices directly to all network pharmacies, as well as sending emails to the PSAOs representing them. There is a URL

---

[1] PSAOs are collective groups of pharmacies that leverage their pooled bargaining power to negotiate contracts with PBMs and others in the pharmaceutical supply and payment chain for the benefit of those pharmacies. (Ex. 1, Decl., ¶ 7.) Independent pharmacies such as Plaintiff typically enter into formal agreements with their PSAOs that designate the PSAO as the pharmacies' contracting agent. (*Id.* at ¶ 8.)

4915-0466-2846.8

address to the new Manual in the fax or email. (*Id*., ¶ 18.) These notices are sent prior to the updates becoming effective. (*Id*.)

From 2021 (when the statutory provision at issue went into effect) through the filing of this lawsuit in March 2025, Plaintiff directly received at least 10 notices of updates to the OptumRx Manual. (*Id*., ¶ 20; Exs. 2-11.) Plaintiff's PSAO also received these notices. (Ex. 1, Decl., ¶ 24.) Since at least 2021, the Manual has advised pharmacies that, "[i]f a Network Pharmacy Provider submits one or more claims to [OptumRx] after the effective date of any update, the terms of the update are accepted by the Network Pharmacy Provider and are considered part of the Agreement." (Ex. 20, Manual, at 3.) The 2024 notices explicitly notified Plaintiff (and its PSAO) that as a participant in OptumRx's pharmacy network, Plaintiff is "responsible for understanding and complying with all of the [Manual's] terms and conditions, including but not limited to" the Manual's "Alternative Dispute Resolution and Arbitration" Section. (Exs. 10-11.)

Neither Plaintiff nor its PSAO objected to any update, and Plaintiff continued to submit prescription claims to OptumRx. (Ex. 1, Decl., ¶¶ 15, 22, 24.) Those claims were adjudicated pursuant to the Manual and Plaintiff's PNA that was negotiated by the Elevate PSAO, as described below. (*Id*.) Since the statute underlying Plaintiff's claims went into effect in 2021, and through the time of Plaintiff's filing of its Complaint in 2025, Plaintiff submitted thousands of claims to OptumRx and has received hundreds of thousands of dollars in reimbursement from OptumRx. (*Id*., ¶ 15.)

As noted, Plaintiff chose to join OptumRx's network by way of a PSAO, Elevate. As such, Plaintiff's network participation is governed by the PNA between Elevate and OptumRx (the "Elevate PNA"). Appointment of a PSAO as a pharmacy's contracting agent is standard in the industry. (Ex. 1, Decl., ¶ 8.) Consistent with that practice, the Elevate PNA recites that it was

3

executed "on behalf of" the PSAO and each of the "Pharmacies"—i.e., "each or all the eligible pharmacy or pharmacies [and] pharmacy chains … participating in [Elevate's] network in accordance with the Agreement, addenda, exhibits, subsequent amendments, etc. and as specified on Exhibit A"—and it expressly contemplates the addition of new pharmacies in the network. (Ex. 21, Elevate PNA, §§ 1.29, 3.2.)[2] After Plaintiff joined Elevate, it became one of the "Pharmacies" for whose benefit and on whose behalf the PNA was executed. In the Elevate PNA, Elevate further represented that it "has the authority to enter into this Agreement as the agent for and on behalf of Pharmacy," and that "each Pharmacy . . . has agreed to be bound by and comply with all of the terms and conditions of the Agreement" and "with all of the requirements of" the Manual. (*Id*., Recital D; § 3.)

The Elevate PNA incorporates the Manual by reference. (Ex. 1, Decl., ¶ 11; Ex. 21, § 11.1 (the Manual as "may be amended from time to time in accordance with the terms of this [PNA], [is] incorporated herein by reference and made a part hereof . . . .")).[3]

The Elevate PNA also provides that it and the parties' rights and obligations under it are governed by California law. (Ex. 21, ¶ 11.11.) (As discussed in more detail herein, OptumRx's Motion should be granted even if West Virginia law is deemed to apply.)

C. **The Manual has a broad arbitration agreement and delegation clause.**

At all times since Plaintiff began participating in OptumRx's network, the Manual has

---

[2] Exhibits 21–22 contain confidential and proprietary material that is redacted, but such material is not pertinent to the Motion.

[3] That incorporation provision also states that "if there is any conflict between the terms of this [PNA] and the [Manual], the terms and conditions of this [PNA] shall control except to the extent otherwise required by law." (*Id*.) As discussed below, there is no conflict between the Elevate PNA and the Manual regarding arbitration provisions pertinent to this Motion.

4

contained an arbitration agreement. (Ex. 1, Decl., ¶ 25; Exs. 12–20.) The Manual[4] contains a discrete section entitled "Alternative Dispute Resolution and Arbitration" that requires arbitration of "any and all Disputes," defined as "any and all issues, disputes, and/or controversies between the parties, including, but not limited to all disputes relating in any way to the parties' relationship, the terms of the Provider Network Agreement . . . and/or or this [Manual], and the Pharmacy Provider's status in the Administrator's network" (Ex. 20, Manual, at 126; all emphasis added.) The Manual continues, "[f]or further avoidance of doubt, all Disputes—including Disputes regarding termination hereof or nonrenewal hereof . . . —are subject to the arbitration process described herein." (*Id.*, at 127.)[5] Such arbitrations are to be administered only by the AAA under its Commercial Rules, as amended from time to time. (*Id.*)

The Manual's arbitration agreement also contains a broad delegation clause. Under that clause, "the arbitrator(s) shall decide any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate." (*Id.*)

Nothing in the Manual's arbitration agreement prohibits a party from prosecuting in arbitration a claim under a federal or state statute. Instead, that agreement provides that the arbitrator "shall be bound by controlling law," but does not specify that law, thereby leaving it up to the arbitrator to determine governing law based on the particular facts of a given Dispute. (*Id.*)

---

[4]All references to the Manual in this Memorandum are to the 2025 version, unless otherwise noted.

[5] The Manual further provides, "[n]otwithstanding judicial proceedings to confirm, vacate, or enforce an award, the parties acknowledge that neither will have the right to litigate a Dispute in court . . . . The parties each waive all such rights by agreeing that all disputes must be resolved exclusively in arbitration." (*Id.*)

**D.      The Elevate PNA, as amended, has a broad, retroactive arbitration agreement and an expansive delegation clause.**

The Elevate PNA was amended, effective April 1, 2025. (Ex. 22, Am. PNA.) As amended, the Elevate PNA contains a provision, found in the section titled "Dispute Resolution," requiring the binding arbitration of "Disputes," defined as "any and all issues, disputes, and/or controversies between the parties, including, but not limited to, all disputes relating to the parties' relationship, the terms of this Agreement and/or Pharmacy Manual, and the Pharmacy's status in the Administrator's network." (Ex. 1, Decl., ¶ 11; Ex. 22, § 10.1.)[6] Any arbitration "shall be administered exclusively by the [AAA] in accordance with its Commercial Arbitration Rules and Mediation Procedures, as they may be amended from time-to-time." (Ex. 22 § 10.2.)

This broad arbitration agreement also is all-encompassing temporally, applicable "to any and all Disputes *whenever they arise or arose, including, past,* present and future *Disputes* except for any Disputes for which either party has already provided notice." (*Id* (emphasis added).)[7] At all times that Plaintiff has been in the OptumRx pharmacy network, including before the Elevate PNA Amendment became effective, the Elevate PNA required that if a "Dispute" (as defined

---

[6]This provision also states that "[n]otwithstanding judicial proceedings to confirm, vacate, or enforce an award . . . the parties acknowledge that neither will have the right to litigate a Dispute in court, and that neither will have a right to a trial by a judge or jury, and the right to discovery is limited. The parties each waive all such rights by agreeing that all Disputes must be resolved exclusively in arbitration." (Ex. 22, § 10.13, emphasis added.)

[7] Courts routinely enforce such retroactive arbitration agreements. *See Trudeau v. Google LLC*, 816 F. App'x 68, 70 (9th Cir. 2020) (applying California law to affirm district court granting of motion to compel arbitration pursuant to arbitration agreement calling for "retroactive application"); *McCumbee v. M Pizza, Inc.*, No. 3:22-CV-128, 2023 WL 2725991, at *12 (N.D. W. Va. Mar. 30, 2023) (Fourth Circuit "'courts have generally applied broad 'any dispute' language *retroactively*, especially when combined with language that refers to all dealings between the parties.'") (quoting *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 267 (4th Cir. 2011)); *Franco v. Greystone Ridge Condo.*, 252 Cal. Rptr. 3d 149, 158 (Cal. Ct. App. 2019) ("The motion to compel arbitration should have been granted" per retroactive arbitration agreement).

6

above) arose, then pre-filing written notice of the dispute satisfying the requirements of the PNA's notice provisions was to be provided to the counterparty, triggering a time for the two parties to discuss a potential resolution to the asserted dispute. (*Id.*)[8] At all relevant times, the Manual has had a similar pre-filing notice requirement. (Ex. 20 at 126–27.)

The Elevate PNA Amendment also has a delegation clause broadly stating that "[f]or the avoidance of doubt, the arbitrator[s] shall decide questions regarding arbitrability or the scope, enforceability and/or interpretation of the parties' agreement to arbitrate . . . ." (Ex. 22, § 10.2.)

Like the arbitration agreement in the Manual, nothing in the Elevate PNA Amendment's arbitration agreement prohibits a party from prosecuting a state (or federal) statutory claim. Instead, it merely provides that the arbitrator "shall be bound by controlling law," thus entrusting the arbitrator with determining governing law based on the particular facts of a given Dispute. (*Id.*)

**E.      Plaintiff sues OptumRx for alleged underpayment as a network pharmacy.**

Plaintiff filed this diversity action on March 31, 2025, alleging two claims. Count I alleges violation of a West Virginia statute prohibiting PBMs from reimbursing non-affiliated pharmacies "in an amount less than the amount the [PBM] reimburses itself or an affiliate for the same prescription drug or pharmacy service." W. Va. Code § 33-51-9(f) ("Statute") [9]; Compl. ¶ 31. Plaintiff employs group pleading to assert that all Defendant PBMs are violating the statute, but Plaintiffs make no allegations that Defendants' alleged conduct was anything but independent of each other. Count II seeks a declaratory judgment regarding the alleged violation of the Statute

---

[8] The Elevate PNA has at all relevant times defined "Notices" as "[a]ll notices, requests, consents, demands and other communications hereunder," and requires such Notices to be "in writing, addressed to the receiving party's addressor," as indicated in the PNA by contact information that follows. (Ex. 21, § 11.4.)

[9] OptumRx notes that the Statute contains no private right of action.

7

and that Plaintiff does not have to arbitrate its asserted claims.

OptumRx was not served with the Complaint until April 4, 2025. Despite both the Manual and the PNA requiring pre-filing notice to facilitate dispute resolution discussions, Plaintiff never provided OptumRx notice. (Ex. 21–22, Elevate PNA, §§ 10.2; 11.4; Ex. 1, Decl., ¶ 13.)

On May 14, 2025—six weeks after initiating this action, Plaintiff filed a Motion for Preliminary Injunction Enjoining Defendants From Continuing to Violate West Virginia Code § 33-51-9(f) (ECF No. 31, ("Preliminary Injunction Motion")) and Motion for Expediated Evidentiary Hearing on its Preliminary Injunction Motion (ECF No. 33, ("Expedited Hearing Motion")). In the Preliminary Injunction Motion, Plaintiff alleges that OptumRx is currently violating W. Va. Code § 33-51-9(f) and that Plaintiff thereby has been irreparably harmed. (ECF No. 32, Memorandum in Support of Preliminary Injunction Motion at 4–5, 9–11.)[10]

## III.    LEGAL STANDARDS

The Federal Arbitration Act ("FAA")[11] embodies a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24

---

[10] Plaintiff's Preliminary Injunction Motion misstates that the Statute prohibits PBMs from reimbursing nonaffiliated pharmacies less than affiliated pharmacies, implying that such prohibition applies regardless of the drug or service involved. (ECF No. 32 at 1.) In fact, the Statute—which Plaintiff's motion never quotes—only requires parity of pay between affiliated and non-affiliated pharmacies for "the same prescription drug or pharmacy service." W. Va. Code § 33-51-9(f). And none of the exhibits to the Preliminary Injunction Motion addresses any pay disparity under the same drug or service analysis required by the Statute. Similarly, the Preliminary Injunction Motion is utterly lacking in any evidence of Plaintiff's financial condition.

[11] Per the Manual and Elevate PNA Amendment, the FAA governs disputes between the parties. (Ex. 20, Manual, at 128-29; Ex. 22, Elevate PNA Amendment, § 10.17.) The FAA applies to all arbitration agreements "involving commerce." 9 U.S.C. § 2. The phrase "involving commerce" is construed broadly, extending to all contracts "relating to" interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-75 (1995). Transactions between OptumRx (a California company with Minnesota operations) and Plaintiff (a West Virginia pharmacy) involve interstate commerce, requiring the FAA's application.

8

(1983). The FAA requires district courts to compel arbitration if they determine that there is a valid arbitration agreement encompassing the issues in dispute. 9 U.S.C. § 3; *Lawhun v. CMH Homes, Inc.*, No. 1:22-CV-112, 2023 WL 5280909, at *2 (N.D. W. Va. Aug. 16, 2023) (Kleeh, J.). To compel arbitration in the Fourth Circuit, a moving party must demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [non-movant] to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). Any doubts concerning the scope of coverage of an arbitration clause are resolved in favor of arbitration. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005).

While there is a presumption that, in the first instance, courts decide issues of arbitrability (*see Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 337 (4th Cir. 2020)), "parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy[.]" *Galloway v. Priority Imps. Richmond, LLC*, No. 20-1020, 2023 WL 1858387, at *1 (4th Cir. Feb. 9, 2023) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Id.* at *2 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019)). "If contracting parties wish to let an arbitrator determine the scope of his own jurisdiction, they must indicate that intent in a clear and specific manner." *Ashworth v. Five Guys Operations, LLC*, No. 3:16-06646, 2016 WL 7422679, at *2 (S.D. W. Va. Dec. 22, 2016) (quoting *Carson v. Giant Foods, Inc.*, 175 F.3d 325, 330 (4th Cir. 1999). "Incorporation by reference of an arbitration body's

9

rules for arbitration that include a rule that the arbitrator will determine gateway arbitrability issues is considered a clear and unmistakable intent by the parties to commit determinations of the arbitrator's jurisdiction to the arbitrator." *Id.*

Courts apply a standard similar to that applied at summary judgment when faced with a motion to compel arbitration. *Barach v. Sinclair Media III, Inc.*, 392 F. Supp. 3d 645, 650 (S.D. W. Va. 2019). "[T]he pleadings and 'all relevant, admissible evidence submitted by the parties' are considered and 'all reasonable inferences' are drawn in favor of the non-moving party." *Id.* (quoting *Meridian Imaging Sols., Inc. v. OMNI Bus. Sols., LLC*, 250 F. Supp. 3d 13, 21 (E.D. Va. 2017)).

## IV.    THE LAW GOVERNING THE ARBITRATION ANALYSIS.

Federal courts sitting in diversity apply the choice of law rules of the forum state. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coe*, 313 F. Supp. 2d 603, 609 (S.D. W. Va. 2004). Under West Virginia law, a choice of law provision "'will be upheld unless the chosen state has no substantial relationship to the parties to the transaction or unless the application of the law of the chosen state would be contrary to the fundamental public policy of' this state." *Id.* (quoting *Bryan v. Mass. Mut. Life Ins. Co.*, 178 W. Va. 773, 364 S.E.2d 786, 790 (1987)). The Elevate PNA has a California choice of law provision. (Ex. 21, Elevate PNA, § 11.11). Accordingly, because this Court sits in diversity, California law applies to the determination of whether Plaintiff's claims must be arbitrated. But, as described *infra*, West Virginia law mandates the same result: that this Court should compel arbitration of Plaintiff's claims against OptumRx.

## V.    ARBITRATION OF ALL CLAIMS SHOULD BE COMPELLED.

Plaintiff's Complaint alone establishes that three of the four factors required to compel arbitration are met. The first and fourth factors (the existence of a dispute and the refusal of the

non-movant to arbitrate) are satisfied because, as evidenced by the Complaint, a dispute exists between Plaintiff and OptumRx, and Plaintiff has refused to arbitrate the dispute. *See Frashuer v. Altice USA, Inc.*, No. 2:21-CV-17 (KLEEH), 2023 WL 195523, at *1 (N.D. W. Va. Jan. 17, 2023) (Kleeh, J.) (holding that the plaintiff's complaint was evidence of a dispute between the parties and that the plaintiff refused to arbitrate the dispute). The third factor (relationship of the transaction to interstate commerce) is also satisfied because Plaintiff alleges that it is a citizen of West Virginia (Compl. ¶ 1) and that OptumRx is a California corporation with its principal place of business in Minnesota. (*Id.* ¶¶ 2, 32); *Frasheur*, 2023 WL 195523, at *1 (holding that the transaction underlying the arbitration agreement involved interstate commerce based on residency of the parties).

The second factor—the existence of a written agreement that includes an arbitration provision which purports to cover the dispute—is readily satisfied here as well, as discussed below.

### A.    Both the Manual and the Elevate PNA have binding arbitration agreements.

The second factor has two subparts: (1) whether there is an agreement between the parties that includes an arbitration provision and (2) whether the arbitration provision purports to cover the parties' dispute. The first subpart is for the Court to decide, though Plaintiff has already admitted the existence of such an agreement. (*See* Compl. ¶ 22.) And because the parties have delegated the second subpart to the arbitrator, the Court should not consider it here. Nonetheless, the parties' dispute falls squarely within the scope of the arbitration agreements, as Plaintiff tacitly admits in its Complaint. (*See id.*)

### i.    The Manual's arbitration agreement is binding on Plaintiff.

At all relevant times, the Manual has had an arbitration agreement requiring that "any and

11

all issues, disputes, and/or controversies between the parties,"[12] must be resolved by binding arbitration. (Ex. 20, Manual, at 127.) The Manual likewise requires pre-filing notice of any asserted dispute. (*Id* ("[i]n the event a Dispute arises . . . the party asserting the Dispute shall provide written notice to the other party describing in detail the nature and scope of the Dispute."))

The Manual (and its arbitration agreement) is binding on Plaintiffs for three reasons. **First**, as shown above, the Manual is incorporated into the Elevate PNA, of which Plaintiff knowingly availed itself when it joined Elevate. (Ex. 21; *see also* Ex. 1, Decl., ¶ 11.) The original and amended Elevate PNA provides that the PNA governs if there is a conflict with the Manual. (Exs. 21–22, at § 11.1.) However, there is no conflict between the Elevate PNA and the Manual pertinent to the issues raised by this Motion. Indeed, as shown above, just like the Manual, the in-force Elevate PNA Amendment also broadly requires arbitration of disputes arising from the parties' relationship. (Ex. 22, Elevate PNA, § 10.1.)

**Second**, Plaintiff is bound to the Manual's arbitration agreement under the "direct benefits estoppel" doctrine. *Bayles v. Evans*, 243 W. Va. 31, 41–42, 842 S.E.2d 235, 245–46 (W. Va. 2020) ("Courts often say that a nonsignatory is estopped from refusing to comply with an arbitration clause 'when it receives a "direct benefit" from a contract containing an arbitration clause.'") (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GmbH*, 206 F.3d 411, 418 (4th Cir. 2000)). Direct benefits estoppel applies to "non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Bayles*, 243 W. Va. at 41 (quoting *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006)). A non-signatory can

---

[12] The language of the 2017 Manual was equally broad but varied slightly, requiring arbitration of "any and all issues and/or disputes between" the parties. (Ex. 12)

"embrace" a contract with an arbitration clause by, among other ways, knowingly seeking and obtaining "direct benefits" from that contract. *Id*.

Here, Plaintiff knowingly sought and obtained direct benefits from the Manual. For years, including after receipt of notices of Manual updates informing Plaintiff of the Manual's arbitration agreement, Plaintiff filled thousands of prescriptions for patients in OptumRx's network and submitted related claims for reimbursement for which OptumRx paid Plaintiff hundreds of thousands of dollars. (Ex. 1, Decl., ¶ 15.) Plaintiff was able to do so only as a result of agreeing to participate in OptumRx's network pursuant to the Manual. (*Id*., ¶ 10.) Plaintiff cannot benefit from the terms of the Manual for all this time, while simultaneously avoiding arbitration under the terms of the very same Manual. This is a classic case for application of direct-benefits estoppel. *See, e.g.*, *HealthPro Pharmacy & Wellness Center v. OptumRx Inc*., No. 3:24-cv-01878-N, 2025 WL 307696, at *2 (N.D. Tex. Jan. 27, 2025) (applying direct benefits estoppel under California law to a network pharmacy's claims against OptumRx to compel arbitration of pharmacy's claims).

**Third**, the doctrine of ratification mandates the same result. Under West Virginia law, "[o]ne who has accepted benefits under a contract . . . after knowledge of facts warranting recission, ratifies the agreement. *Rockwell Mining, LLC v. Pocahontas Land LLC*, 726 F. Supp. 3d 567, 598 (S.D. W. Va. 2024). California law is consistent. *See Hammerl v. Acer Europe, S.A.*, No. C 08-4754 JF (RS), 2009 WL 30130, at *9 (N.D. Cal. Jan. 5, 2009) (per California law, ratification mandates that "a corporation is estopped from denying the validity or enforceability of a contract, after accepting performance and making payment on account thereof."). Plaintiff received multiple notices of updates to the Manual specifically notifying it of the Manual's arbitration agreement, yet continued to submit claims, receiving the benefit of participating in OptumRx's network, subject to the terms of the Manual. (Ex. 1, Decl., ¶¶ 14, 19.) Plaintiff has ratified the Manual and

13

4915-0466-2846.8

its arbitration agreement.

### ii.    The PNA's broad arbitration agreement is also binding on Plaintiff.

Under black-letter principles of agency law, the Elevate PNA binds Plaintiff. By affiliating with the Elevate PSAO to join the OptumRx network, Plaintiff availed itself of the contracts Elevate has negotiated and will negotiate with PBMs on behalf of itself and its constituent pharmacies. (*Id.*, ¶¶ 8, 10.) Appointment of a PSAO as a pharmacy's contracting agent is standard in the industry (*Id.*, ¶ 8), and courts regularly enforce against pharmacy-PSAO-members contracts entered into by the PSAOs representing those pharmacies. *See, e.g.*, *Mabe v. OptumRx*, No. 3:17-CV-01102, 2024 WL 3498353, at *10 (M.D. Pa. July 22, 2024) (applying California law and holding that the "arbitration provisions in the Provider Agreements entered into by PSAOs are enforceable against each Plaintiff contracted with a PSAO" under agency theory); *AAMH Pharm. Inc. v. OptumRx Inc.*, No. 56-2018-00515296-CU-AT-VTA, 2019 WL 13152208, at *5 (Cal. Super. Ct. Apr. 22, 2019) ("each of the Pharmacy Plaintiffs is bound by the respective [Provider] Agreements, including the binding arbitration provisions contained therein," because PSAOs "entered into [Provider] Agreements on behalf of their respective Pharmacy Plaintiff principals").

One of the contracts that Elevate negotiated with OptumRx on behalf of Plaintiff (among other pharmacies) was the Elevate PNA and its Amendment. (*Id.*, ¶ 11.) Plaintiff submitted claims and received reimbursement from OptumRx under the terms of the Elevate PNA and Amendment. (*Id.*, ¶¶ 19–20.) Moreover, the PNA was executed "on behalf of" Elevate and each of its member "Pharmacies". (Ex. 21, Elevate PNA, at 1.) Thus, when Plaintiff joined Elevate, it became one of the "Pharmacies" for whose benefit and on whose behalf the PNA was executed. And Elevate represented in its PNA that it "has the authority" to enter into the PNA as Plaintiff's agent, and that Plaintiff agreed to be bound by and comply with the Elevate PNA and Manual. (Ex. 21, Elevate

14

4915-0466-2846.8

PNA, Recital D.) Accordingly, Plaintiff is bound by the Elevate PNA.

As of April 1, 2025, the Elevate PNA has had a broad—and retroactive—arbitration agreement. The arbitration agreement is applicable to "any and all Disputes *whenever they arise or arose, including past*, present, and future *Disputes* except for any Disputes for which either party has already provided notice," and requires arbitration of "any and all issues, disputes, and/or controversies between the parties, including, but not limited to, all disputes relating to the parties' relationship" (Ex. 22, Am. Elevate PNA, § 10.1.) That arbitration agreement covers Plaintiff's claims, including from a temporal perspective, and thus arbitration should be compelled. And as discussed below, any (misplaced) argument that the arbitration agreement does not apply has been delegated to the arbitrator under the delegation provision in the Elevate PNA Amendment, (Ex. 22 § 10.2), and the Court should not address it. But even if the Court were to address it, that argument should be rejected because Plaintiff did not provide OptumRx pre-filing notice of this dispute. (Ex. 1, Decl., ¶ 13.)

In short, all of Plaintiff's claims fall squarely within the scope of the arbitration agreements in both the Manual and the Elevate PNA as amended, and arbitration should be compelled.

**B.     The parties delegated threshold questions of arbitrability, including unconscionability and the scope, to the arbitrator.**

Because valid agreements to arbitrate exist between Plaintiff and OptumRx, the Court need not entertain any further arguments, as the parties agreed to delegate threshold questions of arbitrability to arbitrators. The U.S. Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc.*, 586 U.S. at 69. The parties did so here. The Manual's delegation clause expressly provides that "the arbitrator(s) shall decide any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the

15

parties' agreement to arbitrate." (Ex. 20, Manual, at 127.) The Elevate PNA Amendment has a similar delegation clause. (Ex. 22, Am. Elevate PNA § 10.2.) These clauses supply clear and unmistakable evidence of the parties' intent to delegate threshold decisions about arbitrability of Plaintiff's claims to arbitrators. *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 66 (2010) (enforcing delegation clause stating that the arbitrator "shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable"); *House v. Rent-A-Ctr. Franchising Int'l, Inc.*, 2016 WL 7394552, at *4 (S.D. W. Va. Dec. 21, 2016) ("If a party fails to challenge the delegation provision, the court must allow the arbitrator to determine enforceability and unconscionability of the underlying arbitration agreement."). Other courts considering this same language agree. *See, e.g.*, *Cherokee Nation v. OptumRx, Inc.*, No. 23-CV-259-RAW-GLJ, 2024 WL 2938495, at *3 (E.D. Okla. May 8, 2024) (2023 Manual "establishes clear and unmistakable evidence that the parties agreed to submit the question of arbitrability to the arbitrator").

The Manual's (and Elevate PNA Amendment's) incorporation of the AAA Rules is further clear and unmistakable evidence of intent to delegate threshold issues of arbitrability. Under those Rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim." AAA Rules, R-7(a). Courts hold that reference to AAA rules "satisfies the clear and unmistakable test." *House*, 2016 WL 7394552, at *6.

Because the parties delegated threshold questions of arbitrability to arbitrators, this should be the end of the Court's analysis, and the Court should compel arbitration. *Id*. This is particularly so as Plaintiff has not challenged specifically—and cannot plausibly so challenge—the enforceability of the delegation clause in the Manual or the Elevate PNA. Without a specific,

16

substantive challenge to the delegation clause, the Court should compel arbitration, leaving any arbitrability issues to the arbitrator. *See Harris v. Equifax Info. Servs.*, No. 2:18-cv-00558, 2019 WL 1714218, at *4 (S.D. W. Va. Apr. 17, 2019) (a challenge to a delegation provision "must be to the delegation provision specifically and not the arbitration agreement as a whole."). Here, Plaintiff alleges only "adhesive and unconscionable contracts". (Compl., ¶ 26.)

### C. Plaintiff's claims fall within the scope of the valid arbitration agreement.

Even if the Court were to consider questions about the scope of the arbitration agreements—and it should not, given the agreement to delegate those issues to arbitrators— Plaintiff's claims fall squarely within the scope of the arbitration agreements. Notably, Plaintiff pleads the existence of the arbitration agreements and tacitly concedes that they apply to this dispute. (Compl. ¶¶ 22–24.) And in any event, the Manual's arbitration agreement commits to arbitration "any and all issues, disputes, and/or controversies between the parties." (Ex. 20, Manual, at 126-27.) Similarly, the Elevate PNA Amendment's arbitration agreement covers "any and all Disputes *whenever they arise or arose, including past*, present and future Disputes except for any Disputes for which either party has already provided notice. (Ex. 22, Am. Elevate PNA, § 10.1 (emphasis added).) This dispute plainly relates to the parties' relationship and thus is covered by the arbitration agreements in the Manual and the Elevate PNA.

### D. Plaintiff's apparent unconscionability challenges are without merit.

Plaintiff's apparent suggestions that its contract with OptumRx (consisting of the Manual and Elevate PNA, as amended) is unconscionable fail as a matter of law. Virtually all of Plaintiff's allegations of unconscionability (including supposed "adhesion") concern the Manual and the

17

Elevate PNA as a whole and are not directed to the arbitration agreements themselves.[13] For this reason alone, Plaintiff's allegations are insufficient to invalidate the arbitration agreements. *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999). But even if the Court chooses to address these allegations, they are without merit for the reasons explained below.

> **i.      Neither the Manual nor the Elevate PNA is procedurally unconscionable.**

Plaintiff's allegations that the Manual and the Elevate PNA are unconscionable are without merit.[14] Plaintiff's main suggestion of unconscionability is the assertion that the Manual and Elevate PNA are procedurally unconscionable because they supposedly are contracts of adhesion (Compl. ¶¶ 19–27) or "form contracts submitted by one party on the basis of this or nothing". *Am. Gen. Life & Accident Inc. Co.*, 429 F.3d at 88. Even assuming that is the case (which it is not), adhesiveness alone is insufficient to establish procedural unconscionability under either West Virginia or California law. *See Montgomery v. Applied Bank*, 848 F. Supp. 2d 609, 616 (S.D. W. Va. 2012) (holding that adhesiveness of the arbitration agreement alone was insufficient to make the agreement procedurally unconscionable); *Carroll v. Belmont Park Entm't LLC*, No. 20-cv-01991-H-RBB, 2021 WL 134102, at *4 (S.D. Cal. Jan. 13, 2021) (holding that adhesion contracts

---

[13] The sole exception is Plaintiff's assertion that its claims must be arbitrated outside West Virginia. (Compl. ¶ 22.) As discussed below, Plaintiff is incorrect, both as a factual matter and because out-of-state arbitration is insufficient here to support a finding of substantive unconscionability.

[14] Other courts applying California law to other, substantially similar versions of the Manual have rejected unconscionability arguments to their arbitration provisions, instead enforcing them. *See, e.g.*, *Mabe*, 2024 WL 3498353, at *53 (applying California law to hold that the plaintiffs failed to demonstrate procedural or substantive unconscionability in 2023 OptumRx Provider Manual); *Copper Bend Pharm., Inc. v. OptumRx*, No. 5-22-0211, 2023 WL 2964485 (Ill. App. Ct. Apr. 14, 2023) (enforcing 2020 OptumRx Provider Manual over pharmacy unconscionability objections, except for limited striking of language as to costs upon a sufficient showing of pharmacy inability to afford arbitration that is inapplicable here).

are enforceable "unless the degree of substantive unconscionability is high." (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017))).

In any event, Plaintiff's Complaint itself belies any notion that the Manual or the Elevate PNA are contracts of adhesion. Plaintiff plainly had choices about contracting with OptumRx, as it also contracted with at least the three other PBMs that are also defendants in this lawsuit. And in making that decision, Plaintiff had the ability to consider the Manual—which is readily available and easily accessible on OptumRx's website (https://professionals.optumrx.com/resources/manuals-guides/provider-manual.html). Moreover, the Elevate PNA and Amendment were not negotiated by Plaintiff but by Elevate, the second largest PSAO in West Virginia by number of member pharmacies (Ex. 1, Decl. ¶ 14), whose purpose is to leverage the collective bargaining power of its members in PBM negotiations.

Plaintiff's allegation that OptumRx denied it access to the Manual or the Elevate PNA is wrong. (Compl. ¶ 20.) OptumRx faxes Manual updates to all network pharmacies, in addition to emailing the updates to PSAOs. Part II.B., *supra.* And OptumRx did nothing to interfere with Plaintiff's access to the Elevate PNA or its amendment. (Ex. 1, Decl. ¶ 12.) *See Frashuer*, 2023 WL 195523, at *3 (rejecting argument that arbitration agreement was unconscionable because plaintiff had no "ability to view" it where plaintiff had made payments and received services pursuant to the contract).

### ii.      Neither the Manual nor the Elevate PNA are substantively unconscionable.

Plaintiff's allegations of substantive unconscionability are similarly unavailing. **First**, Plaintiff's assertion that the California choice of law provision in the Elevate PNA precludes it from pursuing in arbitration its claim under the West Virginia Statute is wrong, and, in any event, irrelevant to whether the Court should compel arbitration. Initially, there is nothing about

proceeding in arbitration, as opposed to in court, that requires Plaintiff to give up any substantive rights. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) ("Statutory claims may be the subject of an arbitration agreement . . . ."). Similarly, nothing in the specific arbitration agreements at issue here requires Plaintiff to waive any claims. To the contrary, both arbitration agreements provide that the arbitrator "shall be bound by controlling law," and they neither require that the arbitrator apply the laws of a specific state nor prohibit applying any particular law. (Manual at 127; Elevate PNA Amendment § 10.6.) Thus, it will be up to the arbitrator to determine the "controlling law" for this dispute. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 541 (1995) (choice-of-law questions "must be decided in the first instance by the arbitrator.").

Nor is the California choice of law provision in the Elevate PNA in any way suspect as it has a substantial connection to OptumRx's state of incorporation, California. *See* Restatement (Second) Conflict of Laws § 187 (choice of law provision will be enforced unless "the chosen state has no substantial relationship to the parties"). Similarly, as discussed, *infra*, there is no basis for Plaintiff's claim that the Manual or Elevate PNA, including the PNA's choice of law provision, were crafted for an illegal purpose of circumventing enforcement of the Statute.

Regardless, the choice of law provision is not specific to the *arbitration agreements*, and therefore has no bearing on whether those agreements are unconscionable. *See Hooters of Am., Inc.*, 173 F.3d at 938. Even if Plaintiff is correct that the choice of law provision precludes its attempt to privately enforce the Statute, this objection is not specific to the arbitration agreements and therefore is not an obstacle to arbitration. *See Johnson v. Opportunity Fin., LLC*, No. 3:22cv190, 2023 WL 2636712, at *5 (E.D. Va. Mar. 24, 2023) ("a plaintiff's chance of success plays no role in the analysis deciding whether arbitration must be had.").

4915-0466-2846.8

Indeed, under both substantive federal law (*Vimar Seguros y Reaseguros*, 515 U.S. at 541) and the delegation clauses here, the choice of law analysis is for the arbitrator to decide—even when a plaintiff raises a preclusion concern based on choice of law. *Cf. Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 334 (4th Cir. 2017) ("[T]he arbitrator should determine in the first instance whether the choice of law provision would deprive a party of [federal statutory] remedies.").[15]

Plaintiff cites *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013), and *Preston v. Ferrer*, 552 U.S. 346 (2008), (Compl. ¶ 24), presumably to invoke the so-called "prospective waiver" exception to enforcement of an arbitration agreement. *See Italian Colors*, 570 U.S. at 235; *Preston*, 552 U.S. at 359. This is a "narrow" exception (*Johnson*, 2023 WL 2636712, at *5), however, and is relevant only to "federal substantive statutory rights," which are not at issue here. *Dillon*, 856 F.3d at 334. Indeed, courts have affirmed arbitration awards involving West Virginia statutory claims. *See, e.g., Siler v. Chase Bank, USA, N.A.*, No. 3:08-CV-130, 2011 WL 13228390 (N.D. W.Va. June 13, 2011) (confirming arbitral award under West Virginia Consumer Credit and Protection Act and common law claims). In any event, as shown above, nothing in the Manual or Elevate PNA prevents Plaintiff from pursuing its West Virginia state statutory law claims in arbitration pursuant to the arbitration agreements in those documents.

**Second**, the costs associated with arbitration pursuant to the Manual and the Elevate PNA are not "onerous" as Plaintiff contends. (Compl. ¶ 22.) Plaintiff does not suggest, let alone demonstrate, that it cannot afford the marginal cost of attending a merits hearing in another state

---

[15] And the arbitrator's choice of law analysis will not be limited to the choice of law provision as Plaintiff erroneously suggests. Rather, the arbitrator's analysis will consider other factors, including which state has the greater interest in the matter. *See* Restatement (Second) Conflict of Laws §§ 187–88.

21

that likely will be no more than a few days. In any event, the arbitration procedures in the Manual and Elevate PNA Amendment are particularly cost effective, especially where a plaintiff's potential damages against OptumRx do not reasonably exceed $3 million. Indeed, OptumRx's business records reflect that Plaintiff's *total* reimbursements from OptumRx for 2021–2025 are less than $1,000,000. (Ex. 1, Decl. ¶ 15.) Plaintiff's potential damages would be even less, as such damages would be measured by the difference between OptumRx's reimbursements to its affiliated pharmacies and its reimbursements to Plaintiff. For disputes under that $3 million threshold, the Elevate PNA Amendment allows arbitrations to be conducted by virtual means at the election of only one party, and with only one arbitrator. (Ex. 22, Elevate PNA Amendment §§ 10.4, 10.5.) Thus, Plaintiff would be forced to arbitrate its claims against OptumRx outside of West Virginia only if it chose to.

**Third**, Plaintiff's allegation that OptumRx used its agreements for a supposedly illegal purpose is illogical. The Statute was enacted in 2021. (Compl. ¶ 17.) Yet the Elevate PNA containing the California choice of law provision was entered into in 2014, and the Manual has included an arbitration provision at least since then. Simple chronology thus defeats any suggestion that the arbitration agreements in those documents were implemented to circumvent a statute that would not even exist for another seven years. Moreover, Plaintiff's assertion of "illegal purpose" is wholly conclusory and it fails to explain how the Manual or the Elevate PNA preclude Plaintiff from vindicating its rights under the Statute (beyond its erroneous argument that the arbitration agreements preclude Plaintiff from attempting to prosecute a claim under the Statute).[16] Plaintiff's

---

[16] Plaintiff's reference to *Cimino v. Bed. Of Educ.*, 158 W. Va. 267, 273–74, 210 S.E.2d 485, 489–90 (W. Va. 1974) (Compl. ¶ 26), is irrelevant here because that case involved a contract that was valid at its execution but was rendered invalid by operation of statute. No such contract or statute is at issue here.

allegation that OptumRx does not make the reports required by W.Va. Code § 33-51-12(d) publicly available on its website (Compl. ¶¶ 16–17) is false. The reports required by that section are readily available on OptumRx's website (https://professionals.optumrx.com/landing/westvirginia.html) and the Manual (Ex. 20, Manual at 165) describes where on OptumRx's website the reports can be found. In any event, the reports do not even address any reimbursement disparity between affiliated and non-affiliated pharmacies on a same drug or same service basis, which is what the Statute addresses.

In short, Plaintiff cannot carry its burden of showing procedural or substantive unconscionability as to the Manual or the Elevate PNA, and both arbitration agreements should be enforced. *See Barach*, 392 F. Supp. 3d at 651 ("The burden of proof rests with the party who seeks to establish a contract term is unconscionable.") (quoting *Montgomery*, 848 F. Supp. 2d at 607).

## VI.    THE PRELIMINARY INJUNCTION MOTION BELONGS IN ARBITRATION.

Plaintiff's Preliminary Injunction Motion involves the same dispute as the claims in this case and therefore belongs in arbitration for the same reasons stated above. The arbitration agreements in the Manual and the Elevate PNA Amendment contain no carve-outs for injunctive relief or any other exceptions that would exclude Plaintiff's Preliminary Injunction Motion from their scope. Indeed, Plaintiff may seek preliminary relief under the AAA rules when this case proceeds to arbitration. *See* AAA R-38, 39; *Arrowhead Global Sols., Inc. v. Datapath, Inc.*, 166 F. App'x 39, 46 (4th Cir. 2006) (affirming order confirming preliminary injunction arbitral award). The Preliminary Injunction Motion need not delay this Court's decision to order the parties to arbitration. *See, e.g.*, *Diskriter, Inc. v. Alecto Healthcare Servs. Ohio Valley LLC*, No. 5:17CV170 (STAMP), 2018 WL 555720, at *1 (N.D. W. Va. Jan. 25, 2018) (motion to compel arbitration granted while motion for preliminary injunction was pending).

4915-0466-2846.8

This Court should not entertain Plaintiff's meritless motion—its claims belong in arbitration and Plaintiff cannot show that, absent a preliminary injunction, arbitration would be a "hollow formality." *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1053 (4th Cir. 1985). Among the many flaws in the Preliminary Injunction Motion (which will be fully addressed in due course), is that Plaintiff offers no evidence supporting its naked conjecture that it will go out of business due to the lower reimbursements it claims. And it certainly does not provide evidence that it will go out of business soon—let alone in the short period of time it would take to re-caption its papers and submit them to a AAA emergency arbitrator. That absence of evidence is especially telling where Plaintiff has remained in business during the four years of alleged underpayments, waited six weeks after filing its Complaint to bring its motion, and fails to show that any lower reimbursement rate on a given drug is causing Plaintiff to lose money (i.e., go into the red) on dispensing that drug.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff is required to arbitrate all of its claims. Accordingly, this Court should dismiss this case pursuant to Fed. R. Civ. P. 12(b)(3), which the Fourth Circuit has held is a proper procedural vehicle for dismissal based on an arbitration clause. *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 594 n.2 (4th Cir. 2023).[17] Alternatively, this Court may stay (and administratively close) this case pending arbitration.

---

[17] *Cf. Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024) (a stay is appropriate upon granting a motion to compel arbitration if a party specifically seeks a stay, as opposed to dismissal).

Dated: May 16, 2025                          Respectfully submitted,

                                             */s/ Pamela C. Deem*
                                             Pamela C. Deem (WVSB No. 976)
                                             KAY CASTO & CHANEY PLLC
                                             707 Virginia Street, East, Suite 1500
                                             Post Office Box 2031(25327)
                                             Charleston, West Virginia 25301
                                             Tel: (304) 345-8900
                                             pdeem@kaycasto.com

                                             John F. Zabriskie (*pro hac vice* application
                                             submitted)
                                             FOLEY & LARDNER LLP
                                             321 North Clark Street, Suite 3000
                                             Chicago, Illinois 60654-4762
                                             Tel: (312) 832-5199
                                             jzabriskie@foley.com

                                             Andrew C. Gresik (*pro hac vice* application
                                             submitted)
                                             FOLEY & LARDNER LLP
                                             150 East Gilman Street, Suite 5000
                                             Madison, Wisconsin 53703-1482
                                             Tel: (608) 258-4235
                                             agresik@foley.com

                                             *Counsel for Defendant OptumRx, Inc.*

25

4915-0466-2846.8

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that service of the foregoing "Memorandum In Support of Motion to Compel Arbitration and To Dismiss Or, In the Alternative, Stay Proceedings" was made through the Court's CM/ECF system which will send notification of the filing to all counsel of record this 16th day of May, 2025.

*/s/ Pamela C. Deem*　　　　　　
Pamela C. Deem (WVSB #976)

4915-0466-2846.8