# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINA
CLARKSBURG DIVISION**

**WATERFRONT FAMILY PHARMACY LLC,**
        **Plaintiff**

**V.**                                                      **CIVIL ACTION NO. 1:25-cv-00029-TSK**

**OPTUMRX, INC. et al.,**
            **Defendants**

**DECLARATION OF MARY JO JONES IN SUPPORT OF OPTUMRX, INC.'S MOTION
TO COMPEL ARBITRATION**

Pursuant to 28 U.S.C. § 1746, I, Mary Jo Jones, declare under penalty of perjury that the following is true and correct to the best of my knowledge, memory, and belief:

1.      I am over twenty-one years old and competent to make this declaration. I make this declaration based on personal knowledge and my review of the business records of Defendant OptumRx, Inc. ("OptumRx").

2.      I am currently employed as Vice President of Network Contracting at OptumRx. In that position, I lead the contracting teams (including pharmacy services administrative organizations ("PSAOs") and independent pharmacy contracting teams for pharmacies in the United States), OptumRx's provider relations team (in charge of interfacing with pharmacies on any claims or network issues), and payment account team. As a result of my work at OptumRx, I am familiar with the general relationship between PSAOs and pharmacies, PSAOs and pharmacy benefit managers ("PBMs"), and pharmacies and PBMs. As a result of my work at OptumRx, I am also familiar with OptumRx's Provider Manual and the process for issuing updates to the Provider Manual and communicating with pharmacies and PSAOs regarding such updates.

4899-5817-6062.1

3.    OptumRx is a PBM with substantial operations in California, among other locations. Health plan clients contract with OptumRx to manage their pharmacy benefits and spending to achieve better health outcomes for the members of those health plans. Among the services OptumRx offers its health plan clients is the administration and maintenance of pharmacy networks where health plan participants can get prescriptions filled. A pharmacy network consists of a group of pharmacies that enter into contracts with a PBM under which they agree to provide pharmacy services to the participants enrolled in the health plans that are that PBM's clients.

4.    OptumRx contracts with pharmacies, either directly or through their PSAO. Those contracts include reimbursement rates for prescription drugs and other terms. When a network pharmacy fills a prescription for a member, it submits a claim for that prescription to OptumRx, which adjudicates the claim and later pays the pharmacy according to the terms of their contract. OptumRx separately charges the appropriate health plan client for the claim.

5.    When joining the OptumRx pharmacy network, pharmacies, either directly or through their PSAO, agree to comply with the terms and conditions of the network contract between the pharmacy or its PSAO on the one hand and OptumRx on the other. In exchange, OptumRx agrees to reimburse the pharmacies for the costs of the medication they dispense and provide payments for other services they provide pursuant to the terms of the network contract.

6.    As noted, to join and gain access to a PBM's pharmacy network like that of OptumRx, some pharmacies enter into a provider network agreement directly with the PBM. Independent pharmacies such as Waterfront Family Pharmacy LLC ("Waterfront") frequently enter into agreements with a PSAO to take advantage of the provider network agreements PSAOs negotiate with PBMs.

2

4899-5817-6062.1

7.     PSAOs are collective groups of pharmacies that leverage their combined bargaining power to negotiate contracts with PBMs and others in the pharmaceutical supply and payment chain. This includes PSAOs, acting for the benefit of their pharmacies, negotiating provider network agreements with PBMs.

8.     Independent pharmacies typically contract with and join a PSAO to avail themselves of the contracts that the PSAO negotiates on behalf of its member pharmacies with PBMs, drug manufacturers, and other parties in the pharmaceutical supply and payment chain. Appointment of a PSAO as a pharmacy's contracting agent is standard in the industry.

9.     Independent pharmacies typically enter into formal agreements with their PSAOs, which designate the PSAO as the pharmacies' contracting agents.

10.     As one of its roles as a PBM in administering pharmacy networks, OptumRx maintains a Provider Manual. OptumRx's Provider Manual is a set of policies and procedures for network pharmacies to follow. As the Provider Manual itself explains, it is incorporated into OptumRx's network participation agreements with network pharmacies (whether direct or through a PSAO). Waterfront could not participate in OptumRx's pharmacy network without first agreeing to the terms of participation set out in the OptumRx Provider Manual.

11.     OptumRx's records show that Waterfront joined the OptumRx pharmacy network on February 15, 2017, through the Elevate PSAO, and that Waterfront has remained affiliated with Elevate. On April 1, 2025, an amendment to Elevate's network participation agreement with OptumRx went into effect ("Elevate PNA Amendment" and collectively with Elevate PNA, "Elevate PNA"). The Elevate PNA Amendment has an arbitration provision covering "any and all Disputes whenever they arise or arose, including past . . . Disputes." (Elevate PNA Amendment, § 10.1; true and correct copies of pertinent provisions from the Elevate PNA Amendment are

3

attached as Exhibit 22 to the Memorandum.)  Both before and after the Amendment, the Elevate PNA has expressly incorporated the terms of the OptumRx Provider Manual as amended from time to time. (*Id*., § 11.1.)

12.     OptumRx has never acted to impede Waterfront's knowing about the contents of the Elevate PNA (and Amendment) or to otherwise restrict its access to the terms of those contracts.

13.     At all times, the Elevate PNA has required that if a "Dispute" arises, as that term is defined in the PNA, then the party asserting the dispute must provide pre-filing written notice, pursuant to the terms of the PNA, of the "Dispute" to the counterparty. (*Id*. at § 10.2; Elevate Original PNA, § 10.2; true and correct copies of pertinent provisions from the Elevate Original PNA are attached as Exhibit 23 to the Memorandum.) That then triggers a time for the parties to discuss a potential resolution. (*Id*.) OptumRx searched its records and has no record of ever receiving such Dispute notice from or on behalf of Waterfront.

14.     At OptumRx, claims submitted by pharmacies affiliated with Elevate are processed pursuant to the Elevate PNA, which was negotiated between OptumRx and AmerisourceBergen Drug Corporation dba Good Neighbor Pharmacy Provider Network and its member pharmacies. Elevate is the second largest PSAO in West Virginia by number of member pharmacies.

15.     The following table reflects the number of prescription drug claims made by Waterfront to OptumRx and the total amount OptumRx reimbursed Waterfront for those claims per year for 2021–2025 (through May 8, 2025) for OptumRx's commercial business line:

| Year | Number of Claims | Total Reimbursement |
|:---:|:---:|:---:|
| **2021** | 1,450 | $72,428.67 |

4

| | | |
|---|---|---|
| **2022** | 1,646 | $83,858.68 |
| **2023** | 1,608 | $100,198.06 |
| **2024** | 1,792 | $127,814.98 |
| **2025 (through May 8, 2025)** | 617 | $55,953.47 |

16.    OptumRx's counsel directed me to exclude Medicare claims and reimbursements from the table in paragraph 15 because Plaintiff's legal contentions regarding those claims are likely preempted by Medicare Part D.

17.    Even assuming solely for the sake of argument that Plaintiff is able to prove OptumRx's liability as alleged in Plaintiff's Complaint, Plaintiff's potential damages, if any, would be substantially less than the total reimbursements reflected in paragraph 15 because such damages would be measured by the difference between reimbursements to OptumRx affiliated pharmacies and those to Plaintiff for the same drug or pharmacy service, not by the total amounts reimbursed to Plaintiff.

18.    Since at least 2019, OptumRx has made its Provider Manual publicly available online on OptumRx's website. In addition, OptumRx updates its Provider Manual regularly, sometimes as frequently as quarterly. When a new update to the Provider Manual becomes available, OptumRx sends a fax directly to all network pharmacies, as well as an email to the PSAOs, notifying them of the updates to the Provider Manual and including a URL address to the revised Provider Manual in the email or fax. These notices are sent in advance of the updates becoming effective.

4899-5817-6062.1

19.     During its time in the OptumRx network, Waterfront received several notifications directly from OptumRx of revised versions of the Provider Manual being available, each containing a URL address to the revised Provider Manual.

20.     Since Waterfront joined OptumRx's network in 2017, through the date of the filing of its lawsuit on March 31, 2025, OptumRx's records show that OptumRx successfully transmitted to Waterfront to its registered fax number (304-225-3784) at least 10 such updates on the following dates:

   a.   June 3, 2020

   b.   June 17, 2022

   c.   September 15, 2022

   d.   December 27, 2022

   e.   January 11, 2023

   f.   March 3, 2023

   g.   June 5, 2023

   h.   August 25, 2023

   i.   February 14, 2024

   j.   July 12, 2024

21.     True and correct copies of these notices are attached as Exhibits 2-11 to the Memorandum, respectively. The 2024 notices expressly alerted Waterfront (and other pharmacies) that the arbitration provision in the Provider Manual applies to them whether they contracted with OptumRx directly or through their PSAO:

> The Manual is incorporated by reference into your respective OptumRx Pharmacy Network Agreement and your Catamaran Participating Provider Agreement (collectively, "Agreement"). Whether you are contracted directly or indirectly

6

4899-5817-6062.1

through a PSAO or a Chain, participating Network Pharmacy Providers are responsible for understanding and complying with all of the Manual's terms and conditions, including but not limited to, **Section IX. Pharmacy Network Participation Requirements, and Section L. Alternative Dispute Resolution and Arbitration**…. . Network Pharmacy Providers should routinely consult the Manual to ensure compliance. As a reminder, the Manual is updated periodically, which Network Pharmacy Providers are expected to comply with the requirements set forth in the most recent version. The current version of the Manual can always be accessed by utilizing the link(s) above. [Emphasis in original.] (Exs. 10–11, at 2.)

22.    OptumRx's business records do not contain an objection made by or on behalf of Waterfront in response to any of these notices referenced above.

23.    The December 27, 2022, notice also contained specific notice of changes to Section L, Alternative Dispute Resolution and Arbitration, of the Provider Manual as it relates to "Updated Leadership Representation" in the dispute resolution meeting. (Ex. 5, at 1.)

24.    The same notices referenced in Paragraphs 20 and 21 were sent to Elevate by email. OptumRx's business records do not contain an objection made by Elevate to any of these notices either.

25.    The arbitration provision in the OptumRx Provider Manual has been part of that manual since before Waterfront joined OptumRx's network in 2017, and since mid-2022, the Provider Manual specifically advised in its Introduction and Table of Contents that it included an arbitration provision. Excerpts of the relevant portions of the final version of the Provider Manual issued each year from 2017-2025 are attached as Exhibits 12-20 to the Memorandum.

7

4899-5817-6062.1

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge, information, and belief.

This Declaration is executed by me on this 15th day of May, 2025, in Dublin, Ireland.


_____

Mary Jo Jones

8