# EXHIBIT 12



# OptumRx

## 2017 provider manual (PM)



# Introduction



The information contained in this document is proprietary and confidential to OptumRx.

## A. About this provider manual (PM)

The Administrator Provider Manual (PM), also known as "Provider Manual", includes the policies and procedures for pharmacies, pharmacists, as well as pharmacy staff (collectively, Network Pharmacy Providers) which serve Members pursuant to the Administrator's participating pharmacy provider network agreements, including, but not limited to the Pharmacy Network Agreement, Specialty Pharmacy Network Agreement and Provider Agreement.

Administrator appreciates your participation in its pharmacy network and your role in delivering quality Covered Prescription Services to our Members. The PM is incorporated into and is a part of your Agreement. As a Network Pharmacy Provider, you are responsible for monitoring and complying with all changes to the PM. Failure to adhere to any of the provisions and terms of the Agreement, which includes this PM, as well as all other applicable documents, will be viewed as a breach of the Agreement.

**Please Note:**
Network Pharmacy Providers' participation in an Administrator or Client network shall not guarantee participation in all networks. Administrator reserves the right to limit Network Pharmacy Providers (and any of its pharmacies') participation in a network in its sole discretion.

Any Agreement entered into by-and-between Administrator and Network Pharmacy Provider will have an effective date executed by Administrator ("Effective Date"); shall continue uninterrupted until terminated by either party according to the terms and conditions of the Agreement.

In the event that Administrator or any of its affiliate acquires a company, whether by merger, stock acquisition or asset acquisition (the "Acquired Company"), that has a pharmacy network agreement with Network Pharmacy Provider in effect at the time of the acquisition (the "Pre-Existing Agreement"), Administrator may, in its sole discretion, require that Network Pharmacy Provider restate the Pre-Existing Agreement to be substantially similar to this Agreement or terminate the Pre-Existing Agreement without penalty to Administrator, and provide Covered Prescription Services to the Acquired Company in accordance with the terms of this Agreement, effective as of the date of the acquisition or other mutually agreed upon date. In the event that Administrator determines, in its sole discretion, that the Pre-Existing Agreement should continue in accordance with its terms, Network Pharmacy Provider's provision of services to the Acquired Company shall remain subject to the terms and conditions of the Pre-Existing Agreement.

Network Pharmacy Provider understands Administrator is relying on its participation in applicable networks and as such shall not be allowed to opt-out of any networks without the written consent of Administrator.

* Information in this PM is current at the time of publication.

* While efforts are made to keep the information current, this PM is subject to change without notice.

* This PM is not designed to cover all circumstances or issues, nor is it a replacement for sound clinical judgment.

* Online Claim adjudication via the Point-of-Sale (POS) System will reflect the most current benefit and takes precedence over printed information.

* For your convenience, all capitalized terms contained in this PM will have the meanings as set forth in the Agreement or are listed and defined in this PM.

* In the event this PM and the Agreement have conflicting language, the PM will supersede the Agreement.

* For specific details regarding the particular terms and conditions of the contract between Administrator and its participating pharmacies, please refer to the Agreement.

* Administrator intends for this PM to provide information as to adequately address questions and concerns related to the Administrator pharmacy program. Please contact the Administrator for additional questions.

* All Administrator fax blast communications (e.g. Faxblast Communication), sent prior and after participation as a Network Pharmacy Provider are hereby incorporated by reference into both the PM and Agreement.

The information contained in this document is proprietary and confidential to OptumRx.



# M. Alternative dispute resolution

Other than with respect to issues giving rise to immediate termination hereof or non-renewal hereof, the parties will work in good faith as set forth below to resolve any and all issues and/or disputes between them (hereinafter referred to as a "Dispute") including, but not limited to all questions of arbitrarily, the existence, validity, scope, interpretation or termination of the Agreement, PM or any term thereof prior to the inception of any litigation or arbitration.

In the event a Dispute arises, the party asserting the Dispute shall provide written notice to the other party identifying the nature and scope of the Dispute to the other party sufficient for a reasonable person to be apprised thereof. If the parties are unable to resolve the Dispute within thirty (30) days after such notice is provided, then either party may request in writing a meeting or telephone conference to resolve the Dispute. At any such meeting or telephone conference, both parties shall have present its President, Vice President, Chief Financial Officer or Chief Officer. Either party may commence a Dispute Resolution in accordance with the rest of this section (or litigation if both parties waive arbitration) only if a representative of the party seeking to commence such litigation or arbitration certifies in writing that one of the following is true: (i) the Dispute was not resolved after faithfully following the procedures set forth above in this section or (ii) the other Party to the dispute did not fully comply with the procedures set forth above in this section.

If the party asserting the Dispute has satisfied the requirements of this section thereof, it shall thereafter be submitted to binding arbitration before a panel of three (3) arbitrators in accordance with the Commercial Dispute Procedures of the American Arbitration Association, as they may be amended from time-to-time (adr.org). All arbitrators must have at least ten (10) years of legal experience in the area of healthcare law.

Any arbitration proceeding under this Agreement shall be conducted in Los Angeles County or Orange County, California. Unless otherwise agreed to in writing by the parties, the party wishing to pursue the Dispute must initiate the arbitration within one (1) year after the date on which notice of the Dispute was given or shall be deemed to have waived its right to pursue the Dispute in any forum.

The arbitrators may construe or interpret, but shall not vary or ignore the terms of this Agreement and shall be bound by controlling law. The arbitrator(s) will decide if any inconsistency exists between the rules of the applicable arbitral forum and the arbitration provisions contained herein. If such inconsistency exists, the arbitration provisions contained herein will control and supersede such rules.

Each party hereby consents to a documentary hearing for all arbitration Claims, by submitting the dispute to the arbitrator(s) by written briefs and affidavits, along with relevant documents; however arbitration claims will be submitted by way of an oral hearing, if any party requests an oral hearing within forty (40) days after service of the Claim and the party remits the appropriate deposit for fees, as well as the arbitrator compensation within ten (10) days of making the request.

Discovery permitted in any arbitration proceeding commenced hereunder is limited as follows:

No later than forty (40) days after the filing and service of a Claim for arbitration, the parties will exchange detailed statements setting forth the facts supporting the Claim(s) and all defenses to be raised during the arbitration and a list of all exhibits, as well as witnesses. In the event any party requests an oral hearing, no later than twenty-one (21) days prior to the oral hearing, the parties will exchange a final list of all exhibits, as well as all witnesses, including any designation of any expert witness(es) together with a summary of their testimony; a copy of all documents to be introduced at the hearing.

Notwithstanding the foregoing, in the event of the designation of any expert witness(es), the following will occur:

(i) all information and documents relied upon by the expert witness(es) will be delivered to the opposing party; (ii) the opposing party will be permitted to depose the expert witness(es); (iii) the opposing party will be permitted to designate rebuttal expert witness(es); and (iv) the arbitration hearing will be continued to the earliest possible date that enables the foregoing limited discovery to be accomplished.

The arbitrators will have no authority to award punitive, exemplary, indirect, special damages or any other damages not

---

The information contained in this document is proprietary and confidential to OptumRx.



measured by the prevailing party's actual damages and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of the Agreement.

The parties expressly intend that any dispute relating to the business relationship between them be resolved on an individual basis so that no other dispute with any third party(ies) may be consolidated or joined with the Dispute. The parties agree that any arbitration ruling by an arbitrator allowing class action arbitration or requiring consolidated arbitration involving any third party(ies) would be contrary to their intent and would require immediate judicial review of such ruling.

If the Dispute pertains to a matter which is generally administered by certain Administrator procedures, such as a quality improvement plan, the policies and procedures set forth in that plan must be fully exhausted by Administrator before Administrator may invoke any right to arbitration under this section.

The decision of the arbitrator(s) on the points in Dispute will be binding and judgment on the award may be entered in any court having jurisdiction thereof. The parties acknowledge that because this Agreement affects interstate commerce the Federal Arbitration Act applies.

In the event that any portion of this section or any part of this Agreement is deemed to be unlawful, invalid or unenforceable, such unlawfulness, invalidity or unenforceability shall not serve to invalidate any other part of this section or this Agreement. In the event any court determines this arbitration proceeding is not binding or otherwise allows litigation involving a dispute to proceed, the parties hereby waive any and all right to trial by jury in or with respect to such litigation, and such litigation would instead proceed with the judge as the finder of fact.

For purposes of clarity, only the arbitration provisions in this section shall apply to any Network Pharmacy Provider terminations or other determinations made as to a Network Pharmacy Provider's status as a participating Network Pharmacy Provider in the Administrator network, pursuant to the NPEC review process as stated in the PM. The laws of the State of California and the laws of the United States (U.S.) applicable therein will govern as to the interpretation, validity and effect of the Agreement, the PM and any addendums.

This section shall survive any termination of the Agreement.

## N. Confidentiality

Network Pharmacy Provider acknowledges as a result of the Agreement, PM and POS System, Network Pharmacy Provider and its employees, as well as agents may have access to Administrator's Proprietary Information, Client's Proprietary Information and Members' Confidential Information. The parties shall comply with all Laws applicable to the confidentiality, use, disclosure and maintenance of Members' personal information ("Confidential Information"). Except as required by law, Network Pharmacy Provider, on behalf of itself and its officers, employees, contractors and other representatives ("Representative(s)"), also agrees to treat as confidential and proprietary, and to take reasonable precautions and care to prevent unauthorized use and/or disclosure of the terms of this Agreement, as well as any other information relating to Administrator's business operations/services obtained in the performance of this Agreement and not part of the public domain ("Proprietary Information").

Proprietary Information shall include Administrator's pricing, programs, services, business practices, databases, software, layouts, designs, formats, processes, applications, systems, technology, files, compilations, exhibits, publications, protocols, information pertaining to Clients, Benefit Plans and formularies. All Proprietary Information remains the exclusive property of Administrator. Network Pharmacy Provider agrees to maintain the confidential nature of such Confidential Information and Proprietary Information and not to disclose such Confidential or Proprietary Information without the express written consent of Administrator.

Network Pharmacy Provider shall only use Confidential or Proprietary Information in connection with the performance of this Agreement or any related Addendum Amendment, Exhibit or Schedule and shall not use the Confidential or Proprietary Information for any other purpose. Nothing in this section shall prohibit Administrator from discussing reimbursement or payment issues with a Client of Benefit Plan Sponsor.

The information contained in this document is proprietary and confidential to OptumRx.