# EXHIBIT 15



# 2020
# Pharmacy Provider Manual



# I.  Introduction



# A. About this Provider Manual (PM)

The Administrator Provider Manual (PM), also known as "Provider Manual" or "Pharmacy Manual", includes the policies and procedures for pharmacies, pharmacists, as well as pharmacy staff (collectively, Network Pharmacy Providers) which serve Members pursuant to the Administrator's participating pharmacy provider network agreements, including, but not limited to the Pharmacy Network Agreement, Specialty Pharmacy Network Agreement and Provider Agreement.

Administrator appreciates your participation in its pharmacy network and your role in delivering quality Covered Prescription Services to our Members. The PM is incorporated into and is a part of your Agreement. As a Network Pharmacy Provider, you are responsible for monitoring and complying with all changes to the PM. Failure to adhere to any of the provisions and terms of the Agreement, which includes this PM, as well as all other applicable documents, will be viewed as a breach of the Agreement.

**Note**: Network Pharmacy Providers' participation in an Administrator or Client network shall not guarantee participation in all networks. Administrator reserves the right to limit Network Pharmacy Providers (and any of its pharmacies') participation in a network in its sole discretion.

Any Agreement entered into by-and-between Administrator and Network Pharmacy Provider will have an effective date executed by Administrator ("Effective Date"); shall continue uninterrupted until terminated by either party according to the terms and conditions of the Agreement.

In the event that Administrator or any of its affiliate acquires a company, whether by merger, stock acquisition or asset acquisition (the "Acquired Company"), that has a pharmacy network agreement with Network Pharmacy Provider in effect at the time of the acquisition (the "Pre-Existing Agreement"), Administrator may, in its sole discretion, require that Network Pharmacy Provider restate the Pre-Existing Agreement to be substantially similar to this Agreement or terminate the Pre-Existing Agreement without penalty to Administrator, and provide Covered Prescription Services to the Acquired Company in accordance with the terms of this Agreement, effective as of the date of the acquisition or other mutually agreed upon date. In the event that Administrator determines, in its sole discretion, that the Pre-Existing Agreement should continue in accordance with its terms, Network Pharmacy Provider's provision of services to the Acquired Company shall remain subject to the terms and conditions of the Pre-Existing Agreement.

Network Pharmacy Provider understands Administrator is relying on its participation in applicable networks and as such shall not be allowed to opt-out of any networks without the written consent of Administrator.

- Information in this PM is current at the time of publication.
- While efforts are made to keep the information current, this PM is subject to change without notice.
- This PM is not designed to cover all circumstances or issues, nor is it a replacement for sound clinical judgment.
- Online Claim adjudication via the Point-of-Sale (POS) System will reflect the most current benefit and takes precedence over printed information.
- For your convenience, all capitalized terms contained in this PM will have the meanings as set forth in the Agreement or are listed and defined in this PM.
- In the event this PM and the Agreement have conflicting language, the PM will supersede the Agreement.
- For specific details regarding the particular terms and conditions of the contract between Administrator and its participating pharmacies, please refer to the Agreement.
- Administrator intends for this PM to provide information as to adequately address questions and concerns related to the Administrator pharmacy program. Please contact the Administrator for additional questions.
- All Administrator fax blast communications (e.g. Faxblast Communication), sent prior and after participation as a Network Pharmacy Provider are hereby incorporated by reference into both the PM and Agreement.

Network Pharmacy Providers, Members or Prescribers suspected of FWA will be reported to the Benefit Plan Sponsor by Administrator for the appropriate reporting to authorities such as the NBI MEDIC, U.S. District Attorney's Office or Office of Inspector General the appropriate State Board of Pharmacy, and/or State Department of Insurance. In FWA cases involving Medicare Part D Sponsors, Administrator will promptly report such instances to the NBI MEDIC.

## M. Alternative Dispute Resolution and Arbitration

Other than with respect to issues giving rise to immediate termination hereof or non-renewal hereof, the parties will work in good faith as set forth below to resolve any and all issues, disputes or controversies between them (hereinafter referred to as a "Dispute") including, but not limited to all questions of arbitrability or the formation, validity, scope and interpretation of this arbitration agreement, all disputes relating in any way to the parties relationship, the Agreement, or the  PM or the breach of either agreement, and all disputes relating in any way to Network Pharmacy Provider's status as a participating Network Pharmacy Provider in the Administrator's network, shall be resolved exclusively by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and Mediation Procedures, as they may be amended from time-to-time.

In the event a Dispute arises, the party asserting the Dispute shall provide written notice to the other party identifying the nature and scope of the Dispute to the other party sufficient for a reasonable person to be apprised thereof. If the parties are unable to resolve the Dispute within thirty (30) days after such notice is provided, then either party may request in writing a meeting or telephone conference to resolve the Dispute. At any such meeting or telephone conference, both parties shall have presented its President, Vice President, Chief Financial Officer or Chief Officer. Either party may commence an arbitration in accordance with the rest of this section only if a representative of the party seeking to commence such  arbitration certifies in writing that one of the following is true: (i) the Dispute was not resolved after faithfully following the procedures set forth above in this section or (ii) the other Party to the dispute did not fully comply with the procedures set forth above in this section.

All arbitrations contemplated by this agreement shall be conducted by a panel of three (3) arbitrators all of whom must have at least ten (10) years of legal experience in the area of healthcare law. Within fourteen (14) days of the initiation of arbitration, each party shall select one person to act as an arbitrator and within fourteen days (14) from the date of the appointment of the last party-appointed arbitrator, the two appointed arbitrators shall then select the third arbitrator who shall act as chairperson of the panel. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the American Arbitration Association in accordance with its Commercial Arbitration Rules. All selected arbitrators shall be impartial and independent and shall act as neutrals.

Any arbitration proceeding under this Agreement shall be conducted in Los Angeles County or Orange County, California. Unless otherwise agreed to in writing by the parties, the party wishing to pursue the Dispute must initiate the arbitration within one (1) year after the date on which written notice of the Dispute was given or shall be deemed to have waived its right to pursue the Dispute in any forum.

The arbitrators may construe or interpret, but shall not vary or ignore the terms of this Agreement and shall be bound by controlling law. The arbitrator(s) will decide if any inconsistency exists between the rules of the applicable arbitral forum and the arbitration provisions contained herein. If such inconsistency exists, the arbitration provisions contained herein will control and supersede such rules.

Each party hereby consents to a documentary hearing for all arbitrations, by submitting to the arbitrators written briefs and affidavits, or declarations, expert opinion, along with documentary evidence. However, the arbitrators shall conduct an oral hearing, if requested in writing by a party, within forty (40) days after service of the initiating party's Demand.

Discovery permitted in any arbitration proceeding commenced hereunder is limited as follows:

No later than forty (40) days after the initiation of arbitration and service of the initiating party's Demand, the parties will exchange: (i) a detailed statement by the initiating party setting forth the facts supporting the claims asserted in its Demand and a detailed statement by the other party identifying all defenses it intends to raise to the Demand and setting forth the facts supporting the defenses; (ii) a list of all exhibits each party intends to introduce at the hearing; and (iii) a list of all witnesses whose testimony the party intends to introduce at the hearing. Each party is permitted to serve up to five

(5) written interrogatories and up to Five (5) written document production requests upon the other party. In computing the total number of interrogatories, each subdivision of separate questions shall be counted as an interrogatory and in computing the total number of document requests, each subdivision of separate requests shall be counted as a document request. In the event any party requests an oral hearing, no later than twenty-one (21) days prior to the oral hearing, the parties will exchange a final list of all exhibits, a final list of all witnesses, including any designation of any expert witness(es) together with a summary of their testimony; and a copy of all documents to be introduced at the hearing.

Notwithstanding the foregoing, in the event of the designation of any expert witness(es), the following will occur: (i) all information and documents relied upon by the expert witness(es) will be delivered to the opposing party simultaneously with the designation; (ii) the opposing party will be permitted to depose the expert witness(es); (iii) the opposing party will be permitted to designate rebuttal expert witness(es) and if so designated, all information and documents relied upon by the rebuttal expert witness(es) will be delivered to the opposing party simultaneously with the designation; and (iv) the hearing will be continued to the earliest possible date that reasonably enables the foregoing limited expert discovery to be accomplished.

The Arbitrators may construe or interpret but shall not vary or ignore the terms of the Agreement. The arbitrators will have no authority to award punitive, exemplary, indirect, special damages or any other damages not measured by the prevailing party's actual damages, except as required by law, and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of the Agreement.

The award rendered by the arbitrators shall be in writing, shall be signed by all the arbitrators, and shall include a statement setting forth the reasons for the disposition of any claim. The award rendered by the arbitrators will be binding and judgment on the awards may be entered in any court having jurisdiction thereof.

Regardless of which party prevails in the arbitration, each party shall be responsible for its own fees and expenses in connection with the arbitration, including without limitation its own attorney's fees and fees of the arbitrator selected by that party, except that the parties shall be responsible in equal shares for payment of the third arbitrator that was selected by the two arbitrators.

The arbitration and the arbitrators' award shall be maintained by the parties as strictly confidential, except as is otherwise necessary to confirm, vacate, or enforce the award or as ordered by a court in connection with judicial proceedings to confirm, vacate or enforce the award. The parties shall take steps to preserve the confidential nature of the award even in judicial proceedings to confirm, vacate, or enforce the award, including by seeking to file the award under seal.

Notwithstanding judicial proceedings to confirm, vacate, or enforce an award, the parties acknowledge that neither will have the right to litigate a Dispute in court, and that neither will have a right to a trial by a judge or jury, and the right to discovery is limited. **The parties each waive all such rights by agreeing that all disputes must be resolved exclusively in arbitration.**

The parties expressly intend and agree that any Dispute be resolved exclusively on an individual basis and that no other dispute(s) with any third party(ies) may be consolidated or joined with the Dispute. The parties agree that the arbitrators lack any authority to resolve the Dispute as part of a class action, private attorney general, or other representative or consolidated action or proceeding, and that any ruling by the arbitrators to the contrary conflicts with their intent and would require immediate judicial review of such ruling. **The parties agree to arbitrate a Dispute solely on an individual basis and each waives the right to participate in a class action, private attorney general, or other representative or consolidated arbitration or proceeding in connection with any Dispute.**

In addition, if the Dispute pertains to a matter which is generally administered by certain Administrator procedures, such as a quality improvement plan, the policies and procedures set forth in that plan must be fully exhausted by Administrator before Administrator may initiate an arbitration under this section.

In the event that any portion of this section or any part of this Agreement is deemed to be unlawful, invalid or unenforceable, such unlawfulness, invalidity or unenforceability shall not serve to invalidate any other part of this section or this Agreement.

For purposes of clarity, only the arbitration provisions in this section and not the provisions regarding pre-arbitration good faith settlement discussions shall apply to any Network Pharmacy Provider terminations or other determinations made as to a Network Pharmacy Provider's status as a participating Network Pharmacy Provider in the Administrator network, pursuant to the NPEC review process as stated in the PM. For avoidance of doubt, all termination disputes are still subject to arbitration.

The parties acknowledge that this arbitration agreement is part of a transaction involving interstate commerce and that the Federal Arbitration Act governs both substantive and procedural aspects of this arbitration, including disputes about the interpretation, validity and effect of the Agreement, the PM and any addendums

This section shall survive any termination of the Agreement and the conclusion of any business dealings between the parties.

## N. Confidentiality

Network Pharmacy Provider acknowledges as a result of the Agreement, PM and POS System, Network Pharmacy Provider and its employees, as well as agents may have access to Administrator's Proprietary Information, Client's Proprietary Information and Members' Confidential Information. The parties shall comply with all Laws applicable to the confidentiality, use, disclosure and maintenance of Members' personal information ("Confidential Information"). Except as required by law, Network Pharmacy Provider, on behalf of itself and its officers, employees, contractors and other representatives ("Representative(s)"), also agrees to treat as confidential and proprietary, and to take reasonable precautions and care to prevent unauthorized use and/or disclosure of the terms of this Agreement, as well as any other information relating to Administrator's business operations/services obtained in the performance of this Agreement and not part of the public domain ("Proprietary Information").

Proprietary Information shall include Administrator's pricing, programs, services, business practices, databases, software, layouts, designs, formats, processes, applications, systems, technology, files, compilations, exhibits, publications, protocols, information pertaining to Clients, Benefit Plans and formularies. All Proprietary Information remains the exclusive property of Administrator. Network Pharmacy Provider agrees to maintain the confidential nature of such Confidential Information and Proprietary Information and not to disclose such Confidential or Proprietary Information without the express written consent of Administrator.

Network Pharmacy Provider shall only use Confidential or Proprietary Information in connection with the performance of this Agreement or any related Addendum Amendment, Exhibit or Schedule and shall not use the Confidential or Proprietary Information for any other purpose. Nothing in this section shall prohibit Administrator from discussing reimbursement or payment issues with a Client of Benefit Plan Sponsor.

If Network Pharmacy Provider or its Representative receives a demand or request to disclose any confidential or proprietary information pursuant to the terms of a court order, subpoena, interrogatory or other legal process, such confidential or proprietary information may be disclosed to the extent required; provided (i) Network Pharmacy Provider promptly notifies Administrator of the existence, terms and circumstances surrounding such demand or request prior to the disclosure of any confidential or proprietary information and provides Administrator with a copy thereof (ii) Network Pharmacy Provider assists Administrator's efforts to obtain, if and to the extent available, whatever protective order or other relief that Administrator desires to be obtained with respect to such demand or request and (iii) such Confidential or Proprietary Information is not disclosed more than three (3) days prior to the last date it may be disclosed without violating such court order, subpoena, interrogatory or other legal process, as such date may be modified by any order or other relief obtained.

Upon termination of this Agreement, Administrator may request the return of its proprietary information in Network Pharmacy Provider's control or possession or if such return is not feasible, Network Pharmacy Provider shall destroy such proprietary information and provide certification of such destruction. Network Pharmacy Provider further agrees that it shall be responsible for any breach of this section by its Representatives. Network Pharmacy Provider agrees that monetary damages would be difficult to ascertain in the event of any breach of this Section and that monetary damages alone would not suffice to compensate Administrator or Client for such breach.

The information contained in this document is proprietary and confidential to OptumRx.