# EXHIBIT 17



# Optum Rx®

# 2022
# Pharmacy Provider Manual

The information contained in this document is proprietary and confidential to OptumRx.



# I. Introduction



**OptumRx Pharmacy Provider Manual 2022 Fourth Edition Version 4.1**
The information contained in this document is proprietary and confidential to OptumRx.

2

# A. About this Provider Manual (PM)

The Administrator Provider Manual (PM), also known as "Provider Manual" or "Pharmacy Manual", includes the policies and procedures for pharmacies, pharmacists, as well as pharmacy staff (collectively, Network Pharmacy Providers) which serve Members pursuant to the Administrator's participating pharmacy provider network agreements, including, but not limited to the Pharmacy Network Agreement, Specialty Pharmacy Network Agreement and Provider Agreement (hereafter "Agreement," which includes the PM and Provider Agreement alike).

Administrator appreciates your participation in its pharmacy network and your role in delivering quality Covered Prescription Services to our Members. The PM is incorporated into and is a part of your Agreement, including if the Agreement is with a Pharmacy Services Administrative Organization (PSAO). As a Network Pharmacy Provider, including if affiliated with a PSAO in the NCPDP database, you are responsible for monitoring and complying with all changes to the PM. Failure to adhere to any of the provisions and terms of the Agreement, which includes this PM, as well as all other applicable documents, will be viewed as a breach of the Agreement.

**Note**: Network Pharmacy Providers' participation in an Administrator or Client network shall not guarantee participation in all networks. Administrator reserves the right to limit Network Pharmacy Providers (and any of its pharmacies) participation in a network in its sole discretion.

Any Agreement entered into by-and-between Administrator and Network Pharmacy Provider or PSAO will have an effective date executed by Administrator ("Effective Date"); shall continue uninterrupted until terminated by either party according to the terms and conditions of the Agreement.

In the event that Administrator or any of its affiliate acquires a company, whether by merger, stock acquisition or asset acquisition (the "Acquired Company"), that has a pharmacy network agreement with Network Pharmacy Provider in effect at the time of the acquisition (the "Pre-Existing Agreement"), Administrator may, in its sole discretion, require that Network Pharmacy Provider restate the Pre-Existing Agreement to be substantially similar to this Agreement or terminate the Pre-Existing Agreement without penalty to Administrator, and provide Covered Prescription Services to the Acquired Company in accordance with the terms of this Agreement, effective as of the date of the acquisition or other mutually agreed upon date. In the event that Administrator determines, in its sole discretion, that the Preexisting Agreement should continue in accordance with its terms, Network Pharmacy Provider's provision of services to the Acquired Company shall remain subject to the terms and conditions of the Pre- Existing Agreement.

**NOTE:  THIS PM (INCLUDING THE AGREEMENT) CONTAINS PROVISIONS GOVERNING THE RESOLUTION OF DISPUTES RELATING IN ANY WAY TO THE PARTIES' RELATIONSHIP, INCLUDING THAT ALL SUCH DISPUTES BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION.  THESE PROVISIONS ARE DESCRIBED IN SECTION IX.M. ("Alternative Dispute Resolution and Arbitration") OF THIS PM.  PLEASE CAREFULLY REVIEW THOSE PROVISIONS.**

Network Pharmacy Provider understands Administrator is relying on its participation in applicable networks and as such shall not be allowed to opt-out of any networks without the written consent of Administrator.

- Information in this PM is current at the time of publication.
- The Provider Manual will be updated periodically, including without limitation through fax blast communications. Updates to the Provider Manual are effective thirty (30) days, or such later date as may be specified by Administrator, after being posted to the website or by any other means as determined solely by the Administrator. If a Network Pharmacy Provider submits one or more claims to Administrator after the effective date of any update, the terms of the update are accepted by the Network Pharmacy Provider and are considered part of the Agreement.
- This PM is not designed to cover all circumstances or issues, nor is it a replacement for sound clinical judgment.



- Online Claim adjudication via the Point-of-Sale (POS) System will reflect the most current benefit and takes precedence over printed information.
- For your convenience, all capitalized terms contained in this PM will have the meanings as set forth in the Agreement or are listed and defined in this PM.
- In the event this PM and the Agreement have conflicting language, the PM will supersede the Agreement.
- For specific details regarding the particular terms and conditions of the contract between Administrator and its participating pharmacies, please refer to the Agreement.
- Administrator intends for this PM to provide information as to adequately address questions and concerns related to the Administrator pharmacy program. Please contact the Administrator for additional questions.
- All Administrator fax blast communications (e.g. Faxblast Communication), sent prior and after participation as a Network Pharmacy Provider are hereby incorporated by reference into both the PM and Agreement.

## B. Images Used in the PM

 Friendly FYI for our valued Network Pharmacy Providers

 Looking out for our valued Network Pharmacy Providers

 Helpful examples and encouragement to reach out for additional assistance (see Section III)

 Notable information for routine use by Network Pharmacy Providers

**OptumRx Pharmacy Provider Manual 2022 Fourth Edition Version 4.1**
The information contained in this document is proprietary and confidential to OptumRx.

5

- Any current or future affiliation with a pharmacy that was terminated under any of the above-listed FWA scenarios (e.g. affiliation includes, but is not limited to, any ownership or controlling interest in any percentage; holding of the physical real estate of the pharmacy location; a consultant relationship; employment of current and/or prior employees; immediate relatives such as spouses, children, parents or siblings; or otherwise in any manner obscuring ownership and/or affiliation links between the pharmacies).

In the event the Network Pharmacy Provider breaches any provision(s) of the Agreement or PM or the Agreement is terminated pursuant to the terms herein, to the fullest extent permitted by applicable law, Administrator also shall be entitled to suspend payment obligations, including but not limited to cancellation of checks, payment suspension of future cycle checks or restriction of claims submission in order to assure that there are sufficient funds available to recoup claims determined to be discrepant as a result of Network Pharmacy Provider's breach(es) of any provision(s) of the Agreement or PM. Administrator's ultimate remedies under this section include immediate termination of the Agreement.

The Agreement may be terminated by Administrator upon prior notice with respect to any or all Network Pharmacy Provider's locations, according to the terms of the Agreement between the applicable parties or PM as applicable or such longer or shorter period of time as required by applicable Plan, Client or law. For the sake of clarity, in the event a particular Plan, Client or law requires a shorter or longer notice period, the Agreement will not terminate for that particular Plan, Client or law until the conclusion of that Plan's, Client's or law's notice period.

Notwithstanding anything to the contrary, at any time during the term of the Agreement, Administrator shall have the exclusive right to create any custom networks, which may exclude Network Pharmacy Provider or any of its individual locations, in its sole discretion. The termination of the Agreement as to any particular Pharmacy shall not prevent the subsequent termination of the Agreement as to any other Network Pharmacy Provider or of the Agreement in its entirety. The Network Provider Evaluation Committee (NPEC) will determine the extent to which a breach has occurred. NPEC will make a determination in regard to participation status or the need for further review and recommendations. Final determination will be made by the NPEC and may result in administrative action up to and including the termination of the Agreement or pharmacy network. All such occurrences will be placed in the Network Pharmacy Provider's credential file. Network Pharmacy Providers that have received notice of disciplinary action may request an informal Appeal Hearing at which the representatives of the pharmacy may present documentation and relevant information in support of their position. The appeal panel hears the appeal and reviews additional documentation presented to evaluate the original decision to terminate.

Network Pharmacy Providers, Members or Prescribers suspected of FWA will be reported to the Benefit Plan Sponsor by Administrator for the appropriate reporting to authorities such as the NBI MEDIC, U.S. District Attorney's Office or Office of Inspector General the appropriate State Board of Pharmacy, and/or State Department of Insurance. In FWA cases involving Medicare Part D Sponsors, Administrator will promptly report such instances to the NBI MEDIC.

## L.  Alternative Dispute Resolution and Arbitration

The parties agree to work in good faith to resolve any and all Disputes.  "Disputes" means any and all issues, disputes, and/or controversies between the parties, including, but not limited to all disputes relating in any way to the parties' relationship, the terms of the Provider Network Agreement ("Agreement") and/or or this PM, and the Pharmacy Provider's status in the Administrator's network. All disputes concerning the immediate termination or non-renewal of the Agreement or the actual or threatened disclosure of Administrator's or Client's Proprietary Information are excluded from the definition of "Disputes." For avoidance of doubt, all termination disputes are still subject to arbitration.

In the event a Dispute arises—other than with respect to issues giving rise to immediate termination or non-renewal of the Agreement and actual or threatened disclosure of Administrator's Proprietary Information or Client's Proprietary Information—the party asserting the Dispute shall provide written notice to the other party describing in detail the nature and scope of the Dispute. Such notice shall be provided promptly and, at the latest,



within one year of the facts giving rise to the Dispute.  The parties thereafter shall engage in good faith discussions to try to resolve the Dispute.  If the parties are unable to resolve the Dispute within thirty (30) days after such notice is provided, then either party may request in writing a meeting or telephone conference to resolve the Dispute. At any such meeting or telephone conference, the parties shall each be represented by their President, Vice President, Chief Financial Officer and/or Chief Officer (or individuals in analogous positions). In the event the parties are still unable to resolve the Dispute, either party may commence arbitration in accordance with the rest of this section, however, any party seeking to commence such arbitration must certify in writing: (i) the Dispute was not resolved after faithfully following the procedures set forth above in this section or (ii) the other Party to the Dispute did not fully comply with the procedures set forth above in this section.  Any such arbitration shall be administered exclusively by the American Arbitration Association in accordance with its Commercial Arbitration Rules and Mediation Procedures, as they may be amended from time-to-time.  For avoidance of doubt, the arbitrator(s) shall decide any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate.  For further avoidance of doubt, all Disputes—including Disputes regarding termination hereof or non-renewal hereof and actual or threatened disclosure of Administrator's Proprietary Information or Client's Proprietary Information—are subject to the arbitration process described herein.

All arbitrations under this Agreement and PM in which the amount in controversy of all parties' claims totals $1,000,000 or less shall be conducted by one (1) arbitrator, who will be mutually selected by the parties within fourteen (14) days of the initiation of the arbitration.  If the parties cannot agree on an arbitrator, then the arbitrator shall be selected by the American Arbitration Association in accordance with its Commercial Arbitration Rules. All other arbitrations under this agreement shall be conducted by a panel of three (3) arbitrators, all of whom must have at least ten (10) years of legal experience in the area of healthcare law or be former judges. For arbitrations conducted by a panel of three (3) arbitrators, within fourteen (14) days of the initiation of arbitration, each party shall select one person to act as an arbitrator and within fourteen days (14) from the date of the appointment of the last party-appointed arbitrator, the two appointed arbitrators shall then select the third arbitrator who shall act as chairperson of the panel. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the American Arbitration Association in accordance with its Commercial Arbitration Rules. All selected arbitrators shall be impartial and independent and shall act as neutrals. The parties can mutually agree, in writing, to vary these deadlines, the venue, and/or the number of arbitrators for any given Dispute.

All arbitrations proceeding under the agreement and PM shall be conducted in Hennepin County, Minnesota except, that arbitrations proceeding under the Agreement and PM with one arbitrator may be conducted by virtual means at the election of either party, and arbitrations proceeding under the Agreement and PM with three arbitrators may be conducted by virtual means with the agreement of all parties. For venue purposes, arbitrations conducted virtually are deemed to have occurred in Minnesota.  Unless otherwise agreed to in writing by the parties, the party wishing to pursue the Dispute must initiate the arbitration within one (1) year after the date on which written notice of the Dispute was given or shall be deemed to have waived its claims in the Dispute, which claims will be deemed forever released.

The arbitrators may construe or interpret but shall not vary or ignore the terms of the Agreement and PM and shall be bound by controlling law. The arbitrator(s) will decide if any inconsistency exists between the rules of the applicable arbitral forum and the arbitration provisions contained herein. If such inconsistency exists, the arbitration provisions contained herein will control and supersede such rules.

For all arbitrations under the Agreement and PM in which the amount in controversy of all parties' claims totals $1,000,000 or less, each party hereby consents to a documentary hearing for all arbitrations, by submitting to the arbitrators, written briefs and affidavits, or declarations, expert opinion, along with documentary evidence. However, the arbitrator(s) shall conduct an oral hearing, if requested in writing by a party, within thirty (30) days after the date set for completion of all permitted discovery.  For all arbitrations under the Agreement and PM in which the amount in controversy of all parties' claims totals more than $1,000,000, the arbitrator shall determine whether parties may present live witness testimony.

After the empaneling of the arbitrator(s), the parties shall have the right to discovery (including without limitation taking depositions) pursuant to the schedule and limits determined by the arbitrator(s) to be appropriate, in light of



the needs of the Dispute, to achieve an efficient resolution of the Dispute while preserving each party's ability to fairly present its claims and defenses.  Notwithstanding the previous sentence, in an arbitration under the Agreement and PM in which the amount in controversy of all parties' claims totals $1,000,000 or less, each party shall be limited to a maximum of one deposition per side, absent a finding by the arbitrator of extremely good cause for additional depositions.

The Arbitrators may construe or interpret but shall not vary or ignore the terms of the Agreement and PM. The arbitrators will have no authority to award punitive, exemplary, indirect, special damages or any other damages not measured by the prevailing party's actual damages, except as required by law, and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of the Agreement and PM.

The award rendered by the arbitrator(s) shall be in writing and shall include a statement setting forth the reasons for the disposition of any claim. The award will be binding and judgment on the awards may be entered in any court having jurisdiction thereof.

Regardless of which party prevails in the arbitration, each party shall be responsible for its own fees and expenses in connection with the arbitration, including without limitation its own attorney's fees, except as required by law.  In arbitrations proceeding under this agreement with one arbitrator, the parties shall be responsible in equal shares for the fees of the arbitrator.  In arbitrations proceeding under this agreement with three arbitrators, each party shall be responsible for the fees of the arbitrator selected by that party, except that the parties shall be responsible in equal shares for payment of the third arbitrator that was selected by the two arbitrators.

The arbitration and the award of the arbitrator(s) shall be maintained by the parties as strictly confidential, except as is otherwise necessary to confirm, vacate, or enforce the award or as ordered by a court in connection with judicial proceedings to confirm, vacate or enforce the award. The parties shall take steps to preserve the confidential nature of the award even in judicial proceedings to confirm, vacate, or enforce the award, including by seeking to file the award under seal.

Notwithstanding judicial proceedings to confirm, vacate, or enforce an award, the parties acknowledge that neither will have the right to litigate a Dispute in court, and that neither will have a right to a trial by a judge or jury, and the right to discovery is limited. **The parties each waive all such rights by agreeing that all disputes must be resolved exclusively in arbitration.**

The parties expressly intend and agree that any Dispute be resolved exclusively on an individual basis and that no other dispute(s) with any third party(ies) may be consolidated or joined with the Dispute. The parties agree that the arbitrators lack any authority to resolve the Dispute as part of a class action, private attorney general, or other representative or consolidated action or proceeding, and that any ruling by the arbitrators to the contrary conflicts with their intent and would require immediate judicial review of such ruling. **The parties agree to arbitrate a Dispute solely on an individual basis and each waives the right to participate in a class proceeding, private attorney general, or other representative or consolidated arbitration or proceeding in connection with any Dispute as claims by third parties will involve different evidence and may result in a delay in resolution of the arbitration.  This provision does not prevent the parties from participating in a class-wide settlement of claims.**

In addition, if the Dispute pertains to a matter which is generally administered by certain Administrator procedures, such as a quality improvement plan, the policies and procedures set forth in that plan must be fully exhausted by Administrator before Administrator may initiate an arbitration under this section.

In the event that any portion of this section or any part of the Agreement or PM is deemed to be unlawful, invalid or unenforceable, such unlawfulness, invalidity or unenforceability shall not serve to invalidate any other part of this section or the Agreement or PM. If, however, the waiver of class action, private attorney general, or other representatives or consolidated action is deemed invalid or unenforceable with respect to a particular claim, neither party is entitled to arbitration of such claim. Instead, all such claims will then be resolved in a court, after the parties arbitrate any individual claims.

The parties acknowledge that this arbitration agreement is part of a transaction involving interstate commerce and

The information contained in this document is proprietary and confidential to OptumRx.



that, notwithstanding any other provision in the Agreement and PM, the Federal Arbitration Act governs both substantive and procedural aspects of this arbitration, including disputes about the interpretation, validity and effect of the Agreement, the PM and any addendums.

This section shall survive any termination of the Agreement and the conclusion of any business dealings between the parties.

# M. Confidentiality

Network Pharmacy Provider acknowledges as a result of the Agreement, PM and POS System, Network Pharmacy Provider and its employees, as well as agents may have access to Administrator's Proprietary Information, Client's Proprietary Information and Members' Confidential Information (collectively, "Proprietary Information"). The parties shall comply with all Laws applicable to the confidentiality, use, disclosure and maintenance of Members' personal information ("Members' Confidential Information"). Except as required by law, Network Pharmacy Provider, on behalf of itself and its officers, employees, contractors and other representatives ("Representative(s)"), also agrees to treat as confidential and proprietary, and to take reasonable precautions and care to prevent unauthorized use and/or disclosure of any of the terms of this Agreement.

Administrator's Proprietary Information shall include Administrator's pricing, programs, services, business practices, databases, software, layouts, designs, formats, processes, applications, systems, technology, files, compilations, exhibits, publications, protocols, information pertaining to Clients, Benefit Plans, formularies, as well as any other information relating to Administrator's  business operations/services obtained in the performance of this Agreement and not part of the public domain. All Administrator's Proprietary Information remains the exclusive property of Administrator.

Network Pharmacy Provider agrees to maintain the confidential nature of such Proprietary Information and not to disclose any such Proprietary Information without the express written consent of Administrator, except as permitted under the terms of the Agreement.

Network Pharmacy Provider shall only use Proprietary Information in connection with the performance of this Agreement or any related Addendum Amendment, Exhibit or Schedule and shall not use the Proprietary Information for any other purpose. Nothing in this section shall prohibit Administrator from discussing reimbursement or payment issues with a Client of Benefit Plan Sponsor.

If Network Pharmacy Provider or its Representative receives a demand or request to disclose any confidential or proprietary information under this PM pursuant to the terms of a court order, subpoena, interrogatory or other legal process, such confidential or proprietary information may be disclosed to the extent required; provided (i) Network Pharmacy Provider promptly notifies Administrator of the existence, terms and circumstances surrounding such demand or request prior to the disclosure of any confidential or proprietary information and provides Administrator with a copy thereof (ii) Network Pharmacy Provider assists Administrator's efforts to obtain, if and to the extent available, whatever protective order or other relief that Administrator desires to be obtained with respect to such demand or request and (iii) such Confidential or Proprietary Information is not disclosed more than three (3) days prior to the last date it may be disclosed without violating such court order, subpoena, interrogatory or other legal process, as such date may be modified by any order or other relief obtained.

Upon termination of this Agreement, Administrator may request the return of its proprietary information in Network Pharmacy Provider's control or possession or if such return is not feasible, Network Pharmacy Provider shall destroy such proprietary information and provide certification of such destruction. Network Pharmacy Provider further agrees that it shall be responsible for any breach of this section by its Representatives. Network Pharmacy Provider agrees that monetary damages would be difficult to ascertain in the event of any breach of this Section and that monetary damages alone would not suffice to compensate Administrator or Client for such breach.