# EXHIBIT 22

## 2025 AMENDMENT TO THE PHARMACY NETWORK AGREEMENT

Effective April 1, 2025 (the "Effective Date") this 2025 Amendment to the Pharmacy Network Agreement ("2025 Amendment to the Agreement") shall serve to amend the Pharmacy Network Agreement ("Agreement") between OptumRx, Inc. on behalf of itself and each of its affiliates(s) that provides pharmacy benefit management services (collectively "Administrator") and AmerisourceBergen Drug Corporation d/b/a Elevate Provider Network ("Company") for itself and as the authorized contracting agent for and on behalf of those participating pharmacies which are members in Company's network of pharmacies (each a "Pharmacy") with reference to the following facts:

A.  **Whereas,** Administrator Company and each Pharmacy may be referred to individually as Party and collectively as Parties to the Agreement, pursuant to which Pharmacy dispenses Covered Prescription Services to Members as a participating pharmacy in Administrator's pharmacy networks, and Administrator makes certain payments to Company, on behalf of Pharmacy, with respect to such dispensed Covered Prescription Services.

B.  **Whereas,** Administrator and Company, on behalf of itself and Pharmacy, desire to amend the Agreement to modify certain terms as described herein.

**Now Therefore,** in consideration of the mutual covenants and promises contained herein, the sufficiency of which is hereby recognized, the Parties to this 2025 Amendment to the Agreement hereby agree to be legally bound as follows:

1.  **Section 1.29 "Pharmacy" or "Pharmacies".** Section 1.29 of the Agreement shall be deleted in its entirety and replaced with the following:

    1.29  "Pharmacy" (collectively, "Pharmacies") shall mean each participating pharmacy or non-pharmacy physician dispensary (with NCPDP#s), that are participating members in Company's network of member pharmacies under this Agreement, including, but not limited to, any addenda, exhibits, or subsequent amendments thereto. Administrator shall use the NCPDP database(s), as indicated in Exhibit A, as the primary means to determine affiliation with Company. Notwithstanding the foregoing, in the event any addenda, exhibits or subsequent amendments to the Agreement include an Exhibit A, or similar attachment, which references a select list of Pharmacies, the Parties agree that such document applies only to such referenced Pharmacy(ies).

2.  **Section 1.31 "Pharmacy Manual".** Section 1.31 of the Agreement shall be deleted in its entirety and replaced with the following:

    1.31 "Pharmacy Manual" or "Provider Manual" shall mean the rules, protocols, policies and administrative procedures adopted by Administrator to be adhered to by Company and/or Pharmacy as applicable in providing Covered Prescription Services and doing business with Administrator and Client under this Agreement, and which, is hereby incorporated by reference into this Agreement. Except to the extent required under applicable law or regulation, in the event of any conflict between the specific terms of this Agreement and the Pharmacy Manual, the terms of the Agreement shall prevail. A change to the Pharmacy Manual may not change or affect the particular Prescription Drug Contracted Rate of the Agreement between the parties.

3.  **Exhibit A.** Exhibit A to the Agreement is hereby deleted in its entirety and replaced with a new Exhibit A, which such new Exhibit A is attached hereto and incorporated herein, and made a part hereof, by this reference. Notwithstanding the foregoing, in the event any addenda, exhibits or subsequent

ORx PNA Amendment_2025

amendments to the Agreement include an Exhibit A, or similar attachment, which references a select list of Pharmacies, the Parties agree that such document applies only to such referenced Pharmacy(ies).

4.  **Section 3.1 Scope of Obligations.** Section 3.1 of the Agreement is hereby deleted in its entirety and replaced with the following:

    3.1  Scope of Obligations. Company represents and warrants to Administrator that it has the legal authority to bind each Pharmacy that is affiliated with it in the NCPDP database, to the terms of this Agreement, including without limitation the updated arbitration provisions set forth in Section 10. Company represents and warrants that it is acting as the authorized contracting agent for and on behalf of each such Pharmacy that is affiliated with Company in the NCPDP database in connection with the execution of the Agreement. Company agrees that it shall require that each Pharmacy which is affiliated with Company and participates hereunder to provide Covered Prescription Services to Members, shall comply with all of the requirements of the Agreement, addenda, exhibits, Pharmacy Manual, the Benefit Plan's payer sheet, any other policies, procedures or initiatives of that Benefit Plan (including, but not limited to, managed care cost containment initiatives, acceptance of electronic responses to Claims, generic substitution, formulary management and drug utilization review including but not limited to intervening with Members and/or prescribing physicians to promote plan-appropriate utilization, formulary compliance, cost management, and other reasonable managed care initiatives), and with all applicable laws and regulations relevant to performance under the Agreement and with Company's and Pharmacies' operations in general.

    Company shall make available to all Pharmacies affiliated with it in the NCPDP database that will provide Covered Prescription Services to Members a copy of the executed 2025 Amendment to the Agreement via Company's Pharmacy portal. Company shall make the attempt to obtain from each such Pharmacy an electronic or written acknowledgement that the Pharmacy: (i) via Company's Pharmacy portal has received such access to a copy of the executed 2025 Amendment to the Agreement; (ii) understands and agrees that Company is its authorized agent in executing the Agreement on behalf of Pharmacy; and (iii) agrees to be bound by the Agreement, including any applicable dispute resolution obligations therein. Company shall retain records of all such acknowledgements by Company and shall make them available to Administrator as specified in Section 9 of the Agreement.  If a particular Pharmacy does not respond to request by Company for the electronic or written acknowledgement referenced in this paragraph, then that Pharmacy is deemed to have agreed that (a) it via Company's Pharmacy portal has received such access to a copy of the executed 2025 Amendment to the Agreement; (b) understands and agrees that Company is its authorized agent in executing the Agreement on behalf of Pharmacy; and (c) agrees to be bound by the Agreement, including any applicable dispute resolution obligations therein. Company shall require each Pharmacy to obtain and maintain all telecommunications services needed to permit the electronic communication of information to and from the POS System, including the most current NCPDP telecommunication standard that is utilized by Administrator.

5.  **Section 3.4.3 Additions or Deletions of Pharmacies.** Section 3.4.3 of the Agreement is hereby deleted in its entirety and replaced with the following:

    3.4.3 Additions or Deletions of Pharmacies. In the event Company acquires or is acquired by, merges with, or otherwise becomes affiliated with another contracting administrator of pharmacies that is already under contract with Administrator to participate in Administrator's pharmacy network, this Agreement and the other agreement will each remain in effect and will continue to apply as they did prior to the acquisition, merger, or affiliation, unless otherwise agreed to in writing by all Parties to such agreements. Company shall use commercially reasonable efforts to notify Administrator prior to Company's for cause termination or suspension in the operation of any

ORx PNA Amendment_2025

Pharmacy from its affiliation with Company in the NCPDP database as referenced in Exhibit A. Company understands that Administrator relies on the information in the NCPDP database regarding its Pharmacy location(s), and Administrator understands that Company and each Pharmacy are separately responsible for reporting its own information to NCPDP.  Pharmacy attests that the Pharmacy's information in the NCPDP database is accurate. Company further agrees to require each of its Pharmacies to update its information in the NCPDP database in a timely manner and as necessary so as to ensure compliance with this section.

6.  **Section 3.4.5 Credentialing.** Section 3.4.5 of the Agreement is hereby deleted in its entirety and replaced with the following:

   3.4.5  Credentialing. Company represents, warrants, and covenants that Company maintains a credentialing program for itself and each of its Pharmacies. Company agrees that Administrator and Administrator's Clients have the right to monitor Company's credentialing program (which shall not be deemed to create any liability for Administrator whatsoever unless otherwise required by applicable law). Accordingly, upon reasonable advance written notice, Company will provide Administrator or Administrator's Clients with on-site access to all Company Records maintained by Company relating to the credentialing of each Pharmacy and all Pharmacists in Charge  which provide Covered Prescription Services to Members or, at Administrator's election, Company shall provide Administrator with copies of such Company Records (including then-current credentialing policies and procedures) and/or certifications of Company's compliance with this Section. Notwithstanding the foregoing, Company acknowledges that Administrator or Administrator's Clients may independently verify licenses, insurance coverage, and any debarment or disciplinary action related to all Pharmacies, pharmacists or pharmacy personnel (e.g., pharmacy technicians) who provide Covered Prescription Services to Members, as such verifications may be required of Administrator's Clients by state or federal laws or otherwise. In addition, Company shall submit the information specified in the credentialing requirements document, which was provided to the Company, to Administrator prior to the execution of the Agreement and, thereafter for each applicable license, no more than thirty (30) days following the renewal date for such license so that Administrator and Administrator's Clients may determine whether Company has met Administrator's credentialing requirements.

   3.4.5.1   Company agrees to provide documentation that supports completion of at least 95% of the credentialing requirements (the "Minimal Credentialing Requirements") for each Pharmacy's participation through Company. The Minimum Credentialing Requirements for Pharmacy participating through Company are as follows:

   3.4.5.1.1   Pharmacy is required to be and is duly licensed in the applicable state of residence.
   3.4.5.1.2   Pharmacy is required to have and has a DEA License (unless exception granted by Administrator).
   3.4.5.1.3   For insurance purposes, Pharmacy is required to a.) maintain minimum liability insurance of $1,000,000 per occurrence / $3,000,000 aggregate or equivalent, b.) be covered by the Federal Tort Claims Act, or c.) state government entities, such state's sovereign immunity.
   3.4.5.1.4   Owner(s) of Pharmacy or Pharmacy are prohibited from providing Covered Prescription Services to Members if participating in state and federal programs to the extent Pharmacy, or any of its owners, are listed on either the Office of Inspector General's (OIG) — U.S. Department of Health & Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE), or the General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS).

ORx PNA Amendment_2025

follows:

3.17 <u>Network Management</u>., Without in any way limiting or otherwise affecting the Parties' applicable rights respecting dispute resolution pursuant to Section 10 hereof, Company agrees that any matters concerning Administrator's performance to the Agreement will be managed and addressed between the Parties. The foregoing shall not be construed to prohibit or limit a Pharmacy from filing complaints with regulators for any and all applicable issues, including the Department of Insurance.

**9.** **<u>Section 4.1.2 Central Payment.</u>** Section 4.1.2 of the Agreement is hereby deleted in its entirety and replaced with a new Section 4.1.2, as follows:

4.1.2 <u>Central Payment</u>.



4.1.2.1

4.1.2.2

4.1.2.3

**10.** **<u>Section 4.1.4 M    </u>**

4.1.4 <u>MAC</u>

**11.** **<u>Section 10 Dispute Resolution.</u>** Section 10 of the Agreement is hereby deleted in its entirety and

ORx PNA Amendment_2025

replaced with a new Section 10, as follows:

**10.** Dispute Resolution.

    10.1.    Disputes means any and all issues, disputes, and/or controversies between the parties, including, but not limited to, all disputes relating to the parties' relationship, the terms of this Agreement and/or Pharmacy Manual, and the Pharmacy's status in the Administrator's network. This arbitration agreement also binds and is applicable to Company and each Pharmacy that is affiliated with Company in the NCPDP database. This arbitration agreement applies to any and all Disputes whenever they arise or arose, including past, present and future Disputes except for any Disputes for which either party has already provided notice.

    10.2.    In the event a Dispute arises, the party asserting the Dispute shall provide written notice to the other party describing in detail the nature and scope of the Dispute. Such notice shall be provided promptly and, at the latest, within three (3) years from the date on which the facts giving rise to the Dispute first became known or should have reasonably been known. The parties thereafter shall engage in good faith discussions to try to resolve the Dispute. If the parties are unable to resolve the Dispute within thirty (30) days after such notice is provided, then either party may request in writing a meeting or telephone conference to resolve the Dispute. At any such meeting or telephone conference, the parties shall each be represented by their President, Vice President, Chief Financial Officer and/or Chief Officer (or individuals in analogous positions, such as Pharmacy owner(s) or their designated representative(s)). In the event the parties are still unable to resolve the Dispute in accordance with the rest of this section, however, any party seeking to commence arbitration must certify in writing that: (i) the Dispute was not resolved after faithfully following the procedures set forth above in this section or (ii) the other party to the Dispute did not fully comply with the procedures set forth above in this section. Any such arbitration shall be administered exclusively by the American Arbitration Association in accordance with its Commercial Arbitration Rules and Mediation Procedures, as they may be amended from time-to-time. **For avoidance of doubt, the arbitrator(s) shall decide questions regarding arbitrability or the scope, enforceability and/or interpretation of the parties' agreement to arbitrate, but only a court may decide if the parties formed an agreement to arbitrate**.

    10.3.    Notwithstanding the preceding Section 10.2, for Disputes respecting immediate termination or non-renewal of this Agreement, or the actual or threatened disclosure of Administrator's, Client's, Company's, or Pharmacy's Proprietary Information, the parties do not need to engage in the good-faith discussion and meeting requirements in Section 10.2 and may instead proceed directly to arbitration after providing written notice of the Dispute.

    10.4.    Unless otherwise agreed to by the parties in writing, all arbitrations under this Agreement in which the amount in controversy of all parties' claims subject to the Dispute, in the aggregate, totals $3,000,000 or less shall be conducted by one (1) arbitrator, who will be selected by the parties from a list of arbitrators proposed by the American Arbitration Association. All other arbitrations under this Agreement shall be conducted by a panel of three (3) arbitrators, all of whom must have at least five (5) years of legal experience in the area of healthcare law or be former judges as determined by the American Arbitration Association, and all of whom are to be selected by the parties from a list of arbitrators proposed by the American Arbitration Association. All selected arbitrators shall be impartial and independent and shall act as neutrals. The parties can mutually agree, in writing, to vary these deadlines, the venue, and/or the number of arbitrators for any given Dispute.

10.5.    All arbitrations proceeding under this Agreement shall be conducted in Hennepin County, Minnesota, or such mutually agreed venue, except arbitrations proceeding under this Agreement with one (1) arbitrator may be conducted by virtual means at the election of either party and arbitrations proceeding under this Agreement with three (3) arbitrators may be conducted by virtual means with the agreement of all parties. All arbitrations proceeding virtually will be deemed to take place in Minnesota, unless otherwise mutually agreed in writing. Unless otherwise agreed to in writing by the parties, the party wishing to pursue the Dispute must initiate the arbitration within one (1) year after the date on which written notice of the Dispute was given or shall be deemed to have waived its claims in the Dispute, which claims will be deemed forever released.

10.6.    The arbitrator(s) may construe or interpret, but shall not vary or ignore, the terms of this Agreement and shall be bound by controlling law. The arbitrator(s) will decide if any inconsistency exists between the rules of the applicable arbitral forum and the arbitration provisions contained herein. If such inconsistency exists, the arbitration provisions contained herein will control and supersede such rules.

10.7.    Each party hereby consents to a documentary hearing for all arbitrations under this Agreement in which the amount in controversy of all parties' claims subject to the Dispute totals $1,000,000 or less. In such a documentary hearing, each party will submit to the arbitrators written briefs along with any affidavits, declarations, deposition transcripts, expert reports, and documentary evidence. However, the arbitrators shall conduct an oral argument (without the presentation of live witness testimony), if a request for an oral argument is made in writing by a party within thirty (30) days after the date set for the completion of all permitted discovery. For all arbitrations under this Agreement in which the amount in controversy of all parties' claims totals more than $1,000,000, the arbitrator shall determine whether parties may present live witness testimony.

10.8.    After the empaneling of the arbitrator(s), the parties shall have the right to discovery, including, but not limited to, taking depositions of fact and expert witnesses, document requests, and interrogatories, pursuant to the schedule and limits determined by the arbitrator(s) to be appropriate, in light of the needs of the Dispute, to achieve an efficient resolution of the Dispute while preserving each party's ability to fairly present its claims and defenses. Notwithstanding the previous sentence, in an arbitration under this Agreement in which the amount in controversy of all parties' claims subject to the Dispute totals $1,000,000 or less, each party shall be limited to a maximum of one deposition per side, absent a finding by the arbitrator of good cause for additional depositions.

10.9.    The Arbitrator(s) may construe or interpret but shall not vary or ignore the terms of the Agreement. The arbitrators will have no authority to award punitive, exemplary, indirect, special damages or any other damages not measured by the prevailing party's actual damages, except as permitted by law, and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of the Agreement.

10.10.    The award rendered by the arbitrators shall be in writing and shall include a statement setting forth the reasons for the disposition of any claim. The award will be binding and judgment on the award may be entered in any court having jurisdiction thereof.

10.11.    Regardless of which party prevails in the arbitration, each party shall be responsible for its own fees and expenses in connection with the arbitration, including without limitation its own attorney's fees, except as required by law. The parties shall be responsible in equal shares for the fees of any arbitrator(s) in arbitrations proceeding under this Agreement.

10.12.    The arbitration and the award of the arbitrator(s)' shall be maintained by the parties as strictly confidential, except as required by law and/or as necessary to confirm, vacate, or enforce the award or as ordered by a court in connection with judicial proceedings to

ORx PNA Amendment_2025

confirm, vacate or enforce the award. The parties shall take steps to preserve the confidential nature of the award even in judicial proceedings to confirm, vacate, or enforce the award, including by seeking to file the award under seal.

10.13. Notwithstanding judicial proceedings to confirm, vacate, or enforce an award, or the specific proceedings included in Section 10.16, the parties acknowledge that neither will have the right to litigate a Dispute in court, and that neither will have a right to a trial by a judge or jury, and the right to discovery is limited. The parties each waive all such rights by agreeing that all Disputes must be resolved exclusively in arbitration.

10.14. The parties expressly intend and agree that any Dispute be resolved exclusively on an individual basis and that no other dispute(s) with any third party(ies) may be consolidated or joined with the Dispute. The parties agree that the arbitrator(s) lack any authority to resolve the Dispute as part of a class action, private attorney general, or other representative or consolidated action or proceeding, and that any ruling by the arbitrator(s) to the contrary conflicts with their intent and would require immediate judicial review of such ruling. The parties agree to arbitrate a Dispute solely on an individual basis and each waives the right to participate in a class proceeding, private attorney general, or other representative or consolidated arbitration or proceeding in connection with any Dispute as claims by third parties will involve different evidence and may result in a delay in resolution of the arbitration. This provision does not prevent the parties from participating in a class-wide settlement of claims. This provision should in no way be construed as limiting a Pharmacy's Dispute to a single NCPDP number in circumstances where a Pharmacy, or its owner(s), operate multiple pharmacies under common ownership, including but not limited to a sole proprietor with multiple pharmacies, a chain of pharmacies, or a multi-pharmacy health system. This provision does not prevent Company from resolving a Dispute in a representational or consolidated proceeding on behalf of Pharmacy(ies).

10.15. In addition, if the Dispute pertains to a matter which is generally administered by certain Administrator procedures, such as a quality improvement plan, the policies and procedures set forth in that plan must be fully exhausted by Administrator before Administrator may initiate an arbitration under this section.

10.16. In the event that any portion of this section or any part of this Agreement is deemed to be unlawful, invalid or unenforceable, such unlawfulness, invalidity or unenforceability shall not serve to invalidate any other part of this section or this Agreement. If, however, the waiver of class action, private attorney general, or other representative or consolidated action is deemed invalid or unenforceable with respect to a particular claim, neither party is entitled to arbitration of such claim. Instead, all such claims will then be resolved in a court, after the parties arbitrate any individual claims.

10.17. The parties acknowledge that this arbitration agreement is part of a transaction involving interstate commerce and that notwithstanding any other provision of this Agreement, the Federal Arbitration Act governs both substantive and procedural aspects of this arbitration, including disputes about the interpretation, validity and effect of the Agreement, the Pharmacy Manual and any addendums.

10.18. This section shall survive any termination of the Agreement and the conclusion of any business dealings between the parties.

**12. <u>Section 11.1 Entire Agreement.</u>** Section 11.1 of the Agreement shall be deleted in its entirety and replaced with the following:

11.1 <u>Entire Agreement</u>. This Agreement (including the Pharmacy Manual, Pharmacy Plan Specifications, the Commercial Addendum, the Medicaid Addendum, the Medicare Part D

ORx PNA Amendment_2025

Addendum, Compensation Exhibits, and all other addenda, exhibits and schedules attached hereto) constitutes the final entire agreement between the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous oral or written agreements, representations or understandings between the parties with respect to the subject matter hereof. The Pharmacy Manual and all such addenda, exhibits and schedules, as the same may be amended from time to time in accordance with the terms of this Agreement, are incorporated herein by reference and made a part hereof, provided, however, if there is any conflict between the terms of this Agreement and the Pharmacy Manual, the terms of the Agreement shall prevail.

13. Section 11.12 Severable Provisions: Headings. of the Agreement shall be deleted in its entirety and replaced with the following:

11.12  Severable Provisions; Lawful Interpretation; Headings. The provisions of this Agreement are severable. Whenever possible, each provision of this Agreement will be interpreted so as to be effective and valid under applicable law, but if any provision of this Agreement should be rendered unenforceable or invalid under applicable law, that provision will be ineffective to the extent of such unenforceability or invalidity without invalidating the remaining provisions of this Agreement. Any such determination shall not invalidate or render unenforceable the remaining provisions of the Agreement in any other jurisdiction or under any other circumstances. The headings of paragraphs in this Agreement are for convenience and reference only and are not intended to and shall not define or limit the scope of the provisions to which they relate. Any provision shall survive this Agreement if its context shows the parties intended it to survive.

14. Exhibit A of the Agreement is hereby deleted in its entirety and replaced with Exhibit A attached hereto.

15. Capitalized terms used in this 2025 Amendment to the Agreement and not defined herein shall have the meanings ascribed to them in the Agreement, as applicable.

16. This 2025 Amendment to the Agreement may only be amended or modified by a dated and mutually signed amendment in writing by Company, on behalf of itself and Pharmacy, and Administrator.

17. This 2025 Amendment to the Agreement constitutes the entire agreement by and between the Parties with respect to the matters contained herein and supersedes any and all prior and/or contemporaneous proposals, negotiations, representations, and any and all other communications on the matters addressed in this 2025 Amendment to the Agreement.

18. Except as otherwise modified by this 2025 Amendment to the Agreement, all other terms and conditions of the Agreement shall remain in full force and effect.

[*Signature page follows*]

ORx PNA Amendment_2025

IN WITNESS WHEREOF, Administrator and Company, on behalf of itself and Pharmacy, have caused this 2025 Amendment to the Agreement to be executed by their authorized representatives as of the date written below.

Company:

AmerisourceBergen Drug Corporation d/b/a Elevate Provider Network (on behalf of itself and Pharmacy)

Chain codes: 904, 638, 959_____

By: _____
(signature)

Name: Peter J Kounelis _____

Title: Vice President, Elevate Provider Network _____

Date: 02/03/2025 _____


Administrator:

OptumRx, Inc.


By: _____
(signature)

Name: Angela Adler _____

Title: VP, Network Contracting _____

Execution Date: 02/03/2025 _____

Effective Date: 04/01/2025 _____


**REMAINDER OF PAGE INTENTIONALY BLANK**

ORx PNA Amendment_2025

# Exhibit A

Administrator, Company and each Pharmacy acknowledges, understands and agrees that Administrator is fully authorized to rely upon information contained in regularly received updates from NCPDP to update all applicable information regarding Company and Pharmacies,  including but not limited to,  Pharmacy demographics, applicable address(es) for Pharmacy communications, Pharmacy payment, and/or remittance advices and/or transmission of payments as well as the effective dates of each Pharmacy's relationship with Company, including applicable Chain Code(s). Company and each Pharmacy are separately responsible for accurately reporting their respective information to NCPDP.

ORx PNA Amendment_2025