IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


WATERFRONT FAMILY PHARMACY LLC,

   Plaintiff,

  v.               CIVIL NO. 1:25-CV-29
                    (KLEEH)

OPTUMRX, INC.,
EXPRESS SCRIPTS, INC., and
CAREMARK PHC, LLC d/b/a
CVS Caremark,

   Defendants.


MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE

Pending before the Court are several motions. For the reasons discussed below, the Court **GRANTS** the motions to compel arbitration, **GRANTS** the motion to sever and transfer, and **DISMISSES** this action.

## I. BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff, Waterfront Family Pharmacy LLC ("Waterfront"), brought this action against the Defendants, Optumrx, Inc. ("Optumrx"), Express Scripts, Inc. ("Express Scripts"), Caremark PHC, LLC d/b/a CVS Caremark ("Caremark"), and Humana Pharmacy Solutions, Inc. ("Humana") (together, "Defendants"). Humana was dismissed from the case on May 13, 2025.

Waterfront alleges that Defendants violated the West Virginia Pharmacy Audit Integrity Act (the "Act"), W. Va. Code § 33-51-

**WATERFRONT V. OPTUMRX ET AL.**                                **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

9(f).    Defendants    are    pharmacy    benefits    managers    ("PBMs"). Waterfront alleges that Defendants refused to reimburse Waterfront at the required rate, fraudulently concealed their actions, and entered    into    unconscionable    arbitration    and    choice-of-law provisions to avoid complying with the Act.

On March 31, 2025, Waterfront filed a complaint.  See ECF No. 1.  On June 4, 2025, it filed an amended complaint to substitute and name the correct Caremark entities.  See ECF No. 76.  The following motions are pending and fully briefed:

(1)  Waterfront's  motion  for  preliminary injunction [ECF No. 31];

(2)  Caremark's motion to compel arbitration [ECF No. 39];

(3)  Optumrx's motion to compel arbitration [ECF No. 45];

(4)  Express Scripts's motion to dismiss [ECF No. 50];

(5)  Express Scripts's motion to sever and transfer claims or, in the alternative, to dismiss [ECF No. 80];

(6)  Optumrx's  renewed  motion  to  compel arbitration [ECF No. 89]; and

(7)  Caremark's  renewed  motion  to  compel arbitration [ECF No. 90].

WATERFRONT V. OPTUMRX ET AL.                                  1:25-CV-29

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

## II.  ALLEGATIONS IN THE AMENDED COMPLAINT

The Act became effective on June 4, 2018.  Am. Compl., ECF No. 76, at ¶ 8.  It regulates the conduct of PBMs and has been amended from time to time.  Id. ¶ 9.  In 2021, the West Virginia Legislature (the "Legislature") passed an amendment to the Act, codified at W. Va. Code § 33-51-9(f).  Id. ¶ 10.  The amendment makes it illegal for a PBM to "reimburse a pharmacy or pharmacist for a prescription drug or pharmacy service in an amount less than the amount the [PBM] reimburses itself or an affiliate for the same prescription drug or pharmacy service."  Id. ¶ 11.  Waterfront alleges that since 2021, Defendants have "intentionally, willfully, systematically, and with fraudulent intent engaged in an illegal scheme" to violate the Act "by reimbursing their own affiliated pharmacies for prescription drugs and pharmacy services at rates much higher than the rates at which they have reimbursed . . . [Waterfront] for the same prescription drugs and pharmacy services."  Id. ¶ 12.  Waterfront alleges that Defendants have acted to cover up and fraudulently conceal their illegal activities.  Id. ¶ 14.

Waterfront alleges that the Act requires Defendants to post on their websites significant quarterly reporting of their activities, and since 2021, Defendants have refused to do so in an

3

**WATERFRONT V. OPTUMRX ET AL.**                                      **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

---

effort to hide unlawful activity.  Id. ¶¶ 15-17.  Waterfront also alleges that Defendants have each imposed unconscionable adhesive contracts, which they have utilized to violate the Act and conceal violations from Waterfront.  Id. ¶ 18.  Waterfront further alleges that Defendants have refused to make copies of the contracts available to Waterfront, and the purpose of this was to fraudulently conceal their illegal scheme.  Id. ¶¶ 19-20.  The adhesive contracts, as Waterfront alleges, contain "broad and onerous choice of law provision and arbitration clauses," which force Waterfront to adjudicate disputes under non-West Virginia law and participate in arbitration in another state.  Id. ¶ 21.

Waterfront brings the following causes of action:

- Count One: Violation of the Act, W. Va. Code § 33-51-9(f) (against all Defendants); and

- Count Two: Declaratory Judgment, 28 U.S.C. § 2201 (against all Defendants).

Waterfront requests the following relief:

- Injunctive relief enjoining Defendants from continually and prospectively violating the Act by entering an order requiring Defendants to comply with the Act in its entirety;

- Injunctive relief ordering Defendants to adhere to the requirements of the Act by publishing their required reports on the publicly available websites for a period of at least 24 months;

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

- Declaratory relief;

- Compensatory damages;

- Punitive damages;

- Pre-judgment and post-judgment interest;

- Attorney's fees costs, and expenses; and

- Any other relief deemed appropriate by the Court.

### III. STANDARD OF REVIEW

### Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows the Court to dismiss an action for lack of jurisdiction over the subject matter.  "The plaintiff bears the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted).  In considering a motion to dismiss pursuant to Rule 12(b)(1), the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  Id. (citation omitted).  The court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citation omitted).  When a defendant asserts multiple defenses, "questions of subject

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

matter jurisdiction must be decided first, because they concern the court's very power to hear the case." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (citations and internal quotation marks omitted).

**Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted."  In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (citations omitted).  A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (citations omitted).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Factual allegations must "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 545.  Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).

### IV.   MOTIONS TO COMPEL ARBITRATION

The Federal Arbitration Act ("FAA") governs written agreements to arbitrate a controversy arising out of a contract. An arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. There is a "strong federal policy in favor of enforcing arbitration agreements." Hayes v. Delbert Servs. Corp., 811 F.3d 666, 671 (4th Cir. 2016) (citation omitted).

Of course, "[a] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted). When parties disagree about whether they formed an agreement to arbitrate at all, "the dispute is generally for courts to decide." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010) (citation omitted). "Although federal law governs the arbitrability of

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

disputes, ordinary state-law principles resolve issues regarding the formation of contracts." May v. Nationstar Mortg., LLC, No. 3:12-CV-43, 2012 WL 3028467, at *4 (N.D.W. Va. July 25, 2012) (citations omitted).   As such, "the district court must determine — as a condition precedent to the entry of any § 3 stay or § 4 order compelling arbitration — whether that party is entitled to enforce the arbitration agreement under state contract law." Rogers v. Tug Hill Operating, LLC, 76 F.4th 279, 287 (4th Cir. 2023).

The United States Supreme Court has "repeatedly interpreted the FAA to require questions about the validity of an arbitration provision to be severed and adjudicated separately from any other contractual question." Schumacher Homes of Circleville, Inc. v. Spencer, 787 S.E.2d 650, 659 (W. Va. 2016).   The arbitration provision in the larger contract must be "carved out, severed from the larger contract, and . . . tested separately under state contract law for validity and enforceability." Id. at 658–59. Accordingly, the Court should examine only the validity of the arbitration provisions themselves, not the other provisions in the contracts.

In the United States Court of Appeals for the Fourth Circuit,

> a litigant can compel arbitration under the
> FAA if he can demonstrate "(1) the existence

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

> of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991).

Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002) (citation omitted).

"[P]arties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy[.]" Galloway v. Priority Imps. Richmond, LLC, No. 20-1020, 2023 WL 1858387, at *1 (4th Cir. Feb. 9, 2023) (citation omitted). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." Id. at *2 (citation omitted). The agreement "must clearly and unmistakably provide that the arbitrator shall determine what disputes the parties agree to arbitrate." Id. at *1 (citation omitted). "Incorporation by reference of an arbitration body's rules for arbitration that include a rule that the arbitrator will determine gateway arbitrability issues is considered a clear and unmistakable intent by the parties to commit determinations of the arbitrator's

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

jurisdiction to the arbitrator." Ashworth v. Five Guys Ops., LLC, No. 3:16-06646, 2016 WL 7422679, at *2 (S.D.W. Va. Dec. 22, 2016) (citation omitted).

**A.    Caremark's Motions [ECF Nos. 39, 90]**

The "Provider Agreement" between Waterfront and Caremark contains an arbitration provision that requires arbitration of "[a]ny dispute, claim or controversy between [Waterfront] and Caremark . . . including Caremark's current, future, or former employees, parents, subsidiaries, affiliates, agents, and assignees . . . including, but not limited to, disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to [Waterfront's] participation in one of more Caremark networks . . . ." See Petersen Decl., ECF No. 39-1, at ¶ 10; 2024 Provider Manual, ECF No. 39-4, at 95. The arbitration provision also requires the arbitrator, rather than a Court, to resolve any threshold challenges to the scope and enforceability of the arbitration provision. Id.

Caremark argues that the Supreme Court of Appeals of West Virginia ("SCAWV") has reviewed the same agreement between Waterfront and Caremark and determined (1) that the Provider Agreement is governed by Arizona law; (2) that the Provider Agreement incorporates the terms of the Provider Manual, including

10

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

the Provider Manual's arbitration provision; and (3) that the provision allowing Caremark to amend the Provider Manual upon notice to Waterfront is enforceable under Arizona law. See W. Va. CVS Pharm., LLC v. McDowell Pharm., Inc., 796 S.E.2d 574 (W. Va. 2017). In response, Waterfront argues (1) that Caremark's motion invokes "illegal and unenforceable arbitration provisions," (2) that the contracts at issue are for an illegal purpose, and (3) that the arbitration provisions are both procedurally and substantively unconscionable.

Here, applying the Adkins factors, they are all satisfied, and arbitration is appropriate. The first factor is satisfied because a dispute exists between the parties. This is evidenced by Waterfront's filing of the amended complaint. See May, 2012 WL 3028467, at *8. The third factor is also satisfied because the parties are citizens of different states. The fourth factor is satisfied because Waterfront has refused to arbitrate, which, again, is evidenced by the filing of the amended complaint. See id. The only remaining requirement — a written agreement that includes an arbitration provision that purports to cover the dispute — is also satisfied for the reasons discussed herein.

"Whether the parties have in fact executed an enforceable agreement to arbitrate is a matter of contract interpretation

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

governed by state law[.]"  Meadows v. Cebridge Acquisition, LLC, 132 F.4th 716, 726 (4th Cir. 2025) (citations omitted).  Because the Provider Agreement executed by Waterfront in 2007 contains an Arizona choice-of-law provision,[1] Arizona law governs its interpretation, including whether it contains a valid and enforceable arbitration provision.  See Provider Agreement, ECF No. 44, at ¶ 13.  "In Arizona, for a valid contract to exist, the contract must manifest mutual assent, i.e., the parties' intent to be bound."  Myers v. Experian Info. Sols. Inc., 734 F. Supp. 3d 912, 919 (D. Ariz. 2024) (citations and internal quotation marks omitted).

1.    **The Provider Agreement incorporates the Provider Manual.**

The Provider Agreement expressly incorporates the Provider Manual.  As discussed above, the SCAWV "conclude[d] that, pursuant to Arizona law, the arbitration agreements were successfully incorporated by reference into the provider agreements executed between the Direct Contract Pharmacies and Caremark."  McDowell, 796 S.E.2d at 585.    Regardless of whether Waterfront is

---

[1] Under West Virginia law, "a choice-of-law provision will be upheld unless the chosen state has no substantial relationship to the parties to the transaction or unless the application of the law of the chosen state would be contrary to the fundamental public policy of this state."  Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coe, 313 F. Supp. 2d 603, 609 (S.D. W. Va. 2004) (citation and internal quotation marks omitted).

12

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

collaterally estopped from arguing otherwise, the SCAWV's interpretation is correct.  To incorporate a document by reference into a contract under Arizona law, the contract's reference to the document "must be clear and unequivocal and must be called to the attention of the other party, he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties."  Weatherguard Roofing Co., Inc. v. D.R. Ward Constr. Co., Inc., 152 P.3d 1227, 1229 (Ariz. Ct. App. 2007) (emphasis and citations omitted).  The Provider Agreement's reference to the Provider Manual meets these requirements.  The Provider Agreement clearly and unequivocally references the Provider Manual by stating, "This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the 'Provider Agreement' or 'Agreement.'"  Provider Agreement, ECF No. 44, at ¶ 11.  By executing the Provider Agreement, Waterfront expressly acknowledged receipt of the Provider Manual and agreed to be bound by its terms: "By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual."  Id. at 3.  The Provider Agreement thus incorporates the terms of the

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

Provider Manual, and Waterfront manifested its assent to those terms when it executed the Provider Agreement.

### 2.    Caremark amended the Provider Manual in accordance with the process set forth therein.

Caremark has amended the Provider Manual from time to time since 2007, including most recently in 2024.  See Petersen Decl., ECF No. 39-1, at ¶¶ 8-14.  The SCAWV has determined that the process for amendments set forth in the Provider Manual is enforceable under Arizona law.  See McDowell, 796 S.E.2d at 583-84.  The version of the Provider Manual in effect when Waterfront executed the Provider Agreement contained a provision allowing Caremark to amend the Provider Manual "by giving notice to [Waterfront] of the terms of the amendment and specifying the date the amendment becomes effective."  2004 Provider Manual, ECF No. 39-3, at 47.  The Provider Manual further stated that "[i]f [Waterfront] submits claims to Caremark after the effective date of any notice or amendment, the terms of the notice or amendment will be deemed accepted by Provider and will be considered part of the Caremark Provider Agreement."  Id.  Every version of the Provider Manual since 2007 has contained a substantially similar provision allowing amendments.  See Petersen Decl., ECF No. 39-1, at ¶ 9.

14

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

Regardless of whether Waterfront is collaterally estopped from challenging the enforceability of the Provider Manual's amendment provision, the SCAWV's determination was correct as a matter of Arizona law.  "[T]o effectively modify a contract, there must be: (1) an offer to modify the contract, (2) assent to or acceptance of that offer, and (3) consideration."  <u>Cap. One Bank (USA), N.A. v. Davey</u>, No. 1 CA-CV 13-0109, 2013 WL 6729261, at *5 (Ariz. Ct. App. Dec. 19, 2013) (citations and internal quotation marks omitted).  Under the process set forth in the Provider Manual, Caremark offers to modify the Provider Manual by providing notice of the proposed amendments and their effective date, and Waterfront manifests its acceptance of the modifications, in consideration of continued participation in Caremark's pharmacy networks, by continuing to submit claims after the amendments' effective date.  <u>See</u> <u>id.</u> ("Conduct, such as . . . continued use . . . following the notifications, can be sufficient to manifest acceptance of an offer or acquiescence in a modification.").

In accordance with the Provider Manual's amendment provision, Caremark provided notice of the most recent amendments to the Provider Manual by delivering a copy of the 2024 Provider Manual to Waterfront on October 2, 2023, and by informing Waterfront that

WATERFRONT V. OPTUMRX ET AL.                                    1:25-CV-29

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

---

the 2024 Provider Manual would be effective on January 1, 2024. Petersen Decl., ECF No. 39-1, at ¶ 15. Waterfront manifested its assent to the amended terms by submitting numerous claims to Caremark since the amended terms became effective on January 1, 2024. See id. Waterfront is thus bound by the current version of the Provider Manual, including the Arbitration Agreement, which requires "[a]ny dispute, claim or controversy between [Waterfront] and Caremark . . . including . . . disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to [Waterfront's] participation in one or more Caremark networks," to be resolved through arbitration. 2024 Provider Manual, ECF No. 39-4, at 95. The arbitration agreement purports to cover Waterfront's claims, so arbitration is compelled. For all of these reasons, the second Adkins factor is satisfied.

> **3. The arbitrator must decide other threshold issues of arbitrability, including scope and unconscionability.**

As discussed above, "parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy[.]" Galloway, 2023 WL 1858387, at *1. The parties did so here. The arbitration agreement delegates threshold issues of arbitrability to the arbitrator in two ways: (1) through an

WATERFRONT V. OPTUMRX ET AL.                                                    1:25-CV-29

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

express delegation clause, and (2) through incorporation of JAMS Comprehensive Arbitration Rules and Procedures ("JAMS Rules").

First, the arbitration agreement contains the following delegation clause that constitutes clear and unmistakable evidence of the parties' intent to arbitrate arbitrability: "The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of the agreement to arbitrate including, but not limited to, any claim that all or part of the agreement to arbitrate is void or voidable for any reason." 2024 Provider Manual, ECF No. 39-4, at 95. The 2024 Provider Manual also states that "any disputes regarding the interpretation, validity, scope, or applicability of this agreement to arbitrate, will be exclusively settled by arbitration." Id. Both the Supreme Court and the Fourth Circuit have held that substantially similar language is sufficient to delegate issues of arbitrability to the arbitrator. See Rent-A-Ctr., West, Inc. v. Jackson, 561 U.S. 63, 66 (2010) (enforcing delegation clause providing that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

any part of this Agreement is void or voidable"); Modern Perfection, LLC v. Bank of Am., N.A., 126 F.4th 235, 238 (4th Cir. 2025) (enforcing delegation clause providing that "[t]he arbitrator . . . will decide questions of law and fact[,] . . . includ[ing] the applicability of this Resolving Claims Section and the validity of the deposit agreement"); Novic v. Credit One Bank, Nat'l Ass'n, 757 F. App'x 235, 238–39 (4th Cir. 2019) (enforcing delegation clause providing that "[c]laims subject to arbitration include . . . the application, enforceability or interpretation of [the cardholder agreement], including this arbitration provision"). The same is true here: the delegation clause requires the arbitrator, rather than this Court, to determine whether Waterfront's claims fall within the scope of the arbitration agreement.

Second, the arbitration agreement also incorporates JAMS Rules. See 2024 Provider Manual, ECF No. 39-4, at 95 ("Unless otherwise agreed to in writing by the parties, the arbitration shall be administered by JAMS pursuant to its then applicable Comprehensive Arbitration Rules and Procedures ('JAMS Rules') including the rule governing Emergency Relief Procedures (available from JAMS)"). In the Fourth Circuit, "the explicit incorporation of JAMS Rules serves as 'clear and unmistakable'

**WATERFRONT V. OPTUMRX ET AL.**                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

evidence of the parties' intent to arbitrate arbitrability." Simply Wireless, Inc. v. T-Mobile US, Inc., 877 F.3d 522, 528 (4th Cir. 2017) (abrogated on other grounds).  Thus, the incorporation of JAMS Rules provides an additional basis for referring any issues of arbitrability to the arbitrator.

In addition, as explained above, the delegation clause requires the arbitrator to resolve "any dispute relating to the interpretation, applicability, enforceability, or formation of the agreement to arbitrate including, but not limited to, any claim that all or part of the agreement to arbitrate is void or voidable for any reason."  2024 Provider Manual, ECF No. 39-4, at 95.  Under Arizona law, a claim of unconscionability is a challenge to the contract's enforceability.  See, e.g., Rizzio v. Surpass Senior Living LLC, 492 P.3d 1031, 1034 (Ariz. 2021).  Thus, the delegation clause mandates that the arbitrator, rather than this Court, must resolve any claim that the arbitration agreement is unconscionable.

Waterfront argues that the delegation clause is "unenforceable for the same reasons as the arbitration provisions and choice of law provisions are unenforceable": because they "operate in tandem with choice of law provisions as an unenforceable prospective waiver of Waterfront's . . . rights";

**WATERFRONT V. OPTUMRX ET AL.**                              **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

because they "fundamentally violate West Virginia public policy"; and because they are "procedurally and substantively unconscionable."  Omnibus Resp., ECF No. 57, at 16.  The Supreme Court has explained that a party challenging a delegation clause on the same ground as other provisions of an arbitration agreement must explain how those other provisions "as applied to the delegation provision render[] that provision unconscionable[.]" Rent-A-Ctr., 561 U.S. at 74 (emphasis removed); see also Modern Perfection, 126 F.4th at 243 ("[A] party seeking to evade a delegation clause's application must assert — and ultimately prove — that there is some defect that 'render[s] that provision' illegal or otherwise unenforceable.") (citations and emphasis omitted).  Here, the Court finds that, like the plaintiff in Rent-A-Center, Waterfront does not explain how its prospective waiver argument or other arguments apply to the delegation clause itself. Waterfront raises no specific, substantive challenge to the delegation clause, so the Court must compel arbitration, leaving any arbitrability issues to the arbitrator.  See Harris v. Equifax Info. Servs., No. 2:18-cv-00558, 2019 WL 1714218, at *4 (S.D. W. Va. Apr. 17, 2019) (stating that a challenge to a delegation provision "must be to the delegation provision specifically and not the arbitration agreement as a whole") (citation omitted).

WATERFRONT V. OPTUMRX ET AL.                                        1:25-CV-29

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

For all of these reasons, the arbitrator must determine questions of arbitrability, including whether Waterfront's claims fall within the scope of the arbitration agreement and any question of unconscionability.

**B.    Optumrx's Motions [ECF Nos. 45, 89]**

Optumrx and Waterfront are parties to two contracts with arbitration provisions: the "Manual" and the "Elevate PNA."  The "Manual" contains a section entitled "Alternative Dispute Resolution and Arbitration" that requires arbitration of "any and all Disputes," which are defined as "any and all issues, disputes, and/or controversies between the parties, including, but not limited to all disputes relating in any way to the parties' relationship, the terms of the Provider Network Agreement . . . and/or or this [Manual], and the Pharmacy Provider's status in the Administrator's network."  See 2025 Pharmacy Provider Manual, ECF No. 46-20, at 126.  The Manual continues, "For further avoidance of doubt, all Disputes — including Disputes regarding termination hereof or nonrenewal hereof . . . — are subject to the arbitration process described herein."  Id. at 127.  The Manual's arbitration agreement also contains a delegation clause.  Under that clause, "the arbitrator(s) shall decide any and all questions regarding

21

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate." Id.

The Elevate PNA was amended, effective April 1, 2025. See 2025 Amendment to PNA, ECF No. 46-22. As amended, the Elevate PNA contains a provision, found in the section entitled "Dispute Resolution," requiring the binding arbitration of "Disputes," which are defined as "any and all issues, disputes, and/or controversies between the parties, including, but not limited to, all disputes relating to the parties' relationship, the terms of this Agreement and/or Pharmacy Manual, and the Pharmacy's status in the Administrator's network." Id. § 10.1. This arbitration agreement is applicable "to any and all Disputes whenever they arise or arose, including, past, present and future Disputes except for any Disputes for which either party has already provided notice." Id. The Elevate PNA also has a delegation clause stating, in bold print, "For the avoidance of doubt, the arbitrator(s) shall decide questions regarding arbitrability or the scope, enforceability and/or interpretation of the parties' agreement to arbitrate . . . ." Id. § 10.2. The Elevate PNA has a California choice-of-law provision. See Elevate PNA, ECF No.

**WATERFRONT V. OPTUMRX ET AL.**                              **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

---

46-21, at § 11.11.  Accordingly, California law applies to the determination of whether Waterfront's claims must be arbitrated.[2]

The arbitration provision has one carveout to its retroactivity: where notice was provided before the amendment went into effect.  Waterfront argues that it notified Optumrx that it intended to file a claim before the arbitration clause was implemented.  Optumrx argus that Waterfront did not give notice before that time.  Optumrx contends that Waterfront sent notice to Elevate, not to Optumrx.  Elevate is a PSAO for Optumrx.  The PNA includes a notice provision:

> All notices, requests, consents, demands and other communications hereunder (collectively, "Notices") shall be in writing, addressed to the receiving party's address (or, at Administrator's sole option and solely for Notices sent by Administrator, Company's facsimile number or email address) as set forth below or to such other address (or, at Administrator's sole option and solely for Notices sent by Administrator, Company's facsimile number or email address) as a party may designate by providing notice pursuant to this section, and either (i) delivered by hand, (ii) went by a national recognized overnight courier, (iii) sent by registered or certified mail, return receipt requested, postage prepaid, (iv) solely with respect to Notices sent by Administrator, sent by facsimile transmission or (v) solely with respect to Notice sent by Administrator, sent by email.

---

[2] See note 1, supra.

23

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

Elevate PNA, ECF No. 46-21, at § 11.4.  The filing of this lawsuit does not comply with it.  It appears undisputed that Optumrx was not served until April 3 or 4 with the required notice, so the carveout to retroactivity does not apply to Waterfront.

Here, applying the Adkins factors, they are all satisfied, and arbitration is appropriate.  The first factor is satisfied because a dispute exists between the parties.  This is, again, evidenced by Waterfront's filing of the amended complaint.  See May, 2012 WL 3028467, at *8.  The third factor is also satisfied because the parties are citizens of different states.  The fourth factor is satisfied because Waterfront has refused to arbitrate, which, again, is evidenced by the filing of the amended complaint.  See id.  The only remaining requirement — a written agreement that includes an arbitration provision that purports to cover the dispute — is also satisfied for the reasons discussed herein.

       **1.    The Manual is binding on Waterfront.**

The Manual and its arbitration agreement are binding on Waterfront for three reasons.  First, the Manual is incorporated into the Elevate PNA, of which Waterfront knowingly availed itself when it joined Elevate.  See Jones Decl., ECF No. 46-1, at ¶ 11. The original and amended Elevate PNA provide that the PNA governs if there is a conflict with the Manual.  See Elevate PNA, ECF No.

WATERFRONT V. OPTUMRX ET AL.                              1:25-CV-29

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

46-21, at § 11.1; 2025 Amendment to PNA, ECF No. 46-22, at § 11.1. There is no conflict, however, between the Elevate PNA and the Manual pertinent to the issues raised by Optumrx's motion. As shown above, as in the Manual, the in-force Elevate PNA Amendment also broadly requires arbitration of disputes arising from the parties' relationship.

Second, Waterfront is bound to the Manual's arbitration agreement under the "direct benefits estoppel" doctrine. Bayles v. Evans, 842 S.E.2d 235, 245–46 (W. Va. 2020) ("Courts often say that a nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause.") (citations omitted). Direct benefits estoppel applies to "non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." Id. (citation omitted).

Here, Waterfront knowingly sought and obtained direct benefits from the Manual. For years, including after receipt of notices of Manual updates informing Waterfront of the Manual's arbitration agreement, Waterfront filled thousands of prescriptions for patients in Optumrx's network and submitted

25

**WATERFRONT V. OPTUMRX ET AL.**                                      **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

related claims for reimbursement for which Optumrx paid Waterfront hundreds of thousands of dollars.  Jones Decl., ECF No. 46-1, at ¶ 15.  Waterfront was able to do so only as a result of agreeing to participate in Optumrx's network pursuant to the Manual.  Id. ¶ 10.  Waterfront cannot benefit from the terms of the Manual for all this time, while simultaneously avoiding arbitration under the terms of the very same Manual.  See, e.g., HealthPro Pharm. & Wellness Ctr. v. OptumRx Inc., No. 3:24-cv-01878-N, 2025 WL 307696, at *2 (N.D. Tex. Jan. 27, 2025) (applying direct benefits estoppel under California law to a network pharmacy's claims against Optumrx to compel arbitration of pharmacy's claims).

Third, the doctrine of ratification mandates the same result. See Hammerl v. Acer Europe, S.A., No. C 08-4754 JF (RS), 2009 WL 30130, at *9 (N.D. Cal. Jan. 5, 2009) (per California law, ratification mandates that "a corporation is estopped from denying the validity or enforceability of a contract, after accepting performance and making payment on account thereof").  Waterfront received multiple notices of updates to the Manual, specifically notifying it of the Manual's arbitration agreement, yet continued to submit claims, receiving the benefit of participating in Optumrx's network, subject to the terms of the Manual.  Jones

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

Decl., ECF No. 46-1, at ¶¶ 14, 19.  Waterfront has ratified the Manual and its arbitration agreement.

> **2.    The PNA's broad arbitration agreement is also binding on Waterfront.**

By affiliating with the Elevate PSAO to join the Optumrx network, Waterfront availed itself of the contracts Elevate has negotiated and will negotiate with PBMs on behalf of itself and its constituent pharmacies.  Id. ¶¶ 8, 10.  Appointment of a PSAO as a pharmacy's contracting agent is standard in the industry, id. ¶ 8, and courts regularly enforce against pharmacy-PSAO-members contracts entered into by the PSAOs representing those pharmacies. See, e.g., Mabe v. OptumRx, No. 3:17-CV-01102, 2024 WL 3498353, at *10 (M.D. Pa. July 22, 2024) (applying California law and holding that the "arbitration provisions in the Provider Agreements entered into by PSAOs are enforceable against each Plaintiff contracted with a PSAO"); AAMH Pharm. Inc. v. OptumRx Inc., No. 56-2018-00515296-CU-AT-VTA, 2019 WL 13152208, at *5 (Cal. Super. Ct. Apr. 22, 2019) ("each of the Pharmacy Plaintiffs is bound by the respective [Provider] Agreements, including the binding arbitration provisions contained therein," because PSAOs "entered into [Provider] Agreements on behalf of their respective Pharmacy Plaintiff principals").  One of the contracts that Elevate negotiated with Optumrx on behalf of Waterfront was the Elevate

27

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

PNA and its Amendment.  Jones Decl., ECF No. 46-1, at ¶ 11. Waterfront submitted claims and received reimbursement from Optumrx under the terms of the Elevate PNA and Amendment.  Id. ¶ 15).  Moreover, the PNA was executed "on behalf of" Elevate and each of its member pharmacies.  Elevate PNA, ECF No. 46-21, at 1. Thus, when Waterfront joined Elevate, it became one of the pharmacies for whose benefit and on whose behalf the PNA was executed.  Elevate represented in its PNA that it "has the authority" to enter into the PNA as Waterfront's agent, and that Waterfront agreed to be bound by and comply with the Elevate PNA and Manual.  Id. at Recital D.  Accordingly, Waterfront is bound by the Elevate PNA.

As of April 1, 2025, the Elevate PNA has had a broad and retroactive arbitration agreement.  The arbitration agreement is applicable to "any and all Disputes whenever they arise or arose, including past, present, and future Disputes except for any Disputes for which either party has already provided notice," and it requires arbitration of "any and all issues, disputes, and/or controversies between the parties, including, but not limited to, all disputes relating to the parties' relationship[.]"  2025 Amendment to PNA, ECF No. 46-22, at § 10.1.  That arbitration agreement purports to cover Waterfront's claims, so arbitration is

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

compelled.  For all of these reasons, the second <u>Adkins</u> factor is satisfied.

> **3.    The arbitrator must decide other threshold issues of arbitrability, including scope and unconscionability.**

As discussed above, "parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy[.]"  <u>Galloway</u>, 2023 WL 1858387, at *1.  The parties did so here.  The Manual's delegation clause expressly provides that "the arbitrator(s) shall decide any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate."  Pharmacy Provider Manual, ECF No. 46-20, at 127.  The Elevate PNA Amendment has a similar delegation clause.  2025 Amendment to PNA, ECF No. 46-22, at § 10.2.  These clauses supply clear and unmistakable evidence of the parties' intent to delegate threshold decisions about arbitrability of Waterfront's claims to arbitrators.  Both the Supreme Court and the Fourth Circuit have held that substantially similar language is sufficient to delegate issues of arbitrability to the arbitrator.  See <u>Rent-A-Ctr.</u>, 561 U.S. at 66 (enforcing delegation clause providing that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable"); Modern Perfection, 126 F.4th at 238 (enforcing delegation clause providing that "[t]he arbitrator . . . will decide questions of law and fact[,] . . . includ[ing] the applicability of this Resolving Claims Section and the validity of the deposit agreement"); Novic, 757 F. App'x at 238–39 (enforcing delegation clause providing that "[c]laims subject to arbitration include . . . the application, enforceability or interpretation of [the cardholder agreement], including this arbitration provision").  The same is true here: the delegation clause requires the arbitrator, rather than this Court, to determine whether Waterfront's claims fall within the scope of the arbitration agreement.

The Manual's (and Elevate PNA Amendment's) incorporation of the AAA Rules is additional clear and unmistakable evidence of intent to delegate threshold issues of arbitrability. See Pharmacy Provider Manual, ECF No. 46-20, at 127 ("Any such arbitration shall be administered exclusively by the American Arbitration Association in accordance with its Commercial Arbitration Rules and Mediation Procedures, as they may be amended from time-to-

**WATERFRONT V. OPTUMRX ET AL.**                                                 **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

time."); 2025 Amendment to PNA, ECF No. 46-22, at § 10.2 (same). Under those Rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim." See AAA Rule R-7(a). Reference to AAA rules "satisfies the clear and unmistakable test." House v. Rent-A-Ctr. Franchising Int'l, Inc., No. 3:16-06654, 2016 WL 7394552, at *6 (S.D.W. Va. Dec. 21, 2016) (citation omitted).

As discussed above, the Supreme Court has explained that a party challenging a delegation clause on the same ground as other provisions of an arbitration agreement must explain how those other provisions "as applied to the delegation provision render[] that provision unconscionable[.]" Rent-A-Ctr., 561 U.S. at 74 (emphasis removed); see also Modern Perfection, 126 F.4th at 243 ("[A] party seeking to evade a delegation clause's application must assert — and ultimately prove — that there is some defect that 'render[s] that provision' illegal or otherwise unenforceable.") (citations and emphasis omitted). Waterfront has not done so here. For the same reasons as discussed above with respect to the Caremark delegation clause, the Court finds that, like the plaintiff in Rent-A-Center, Waterfront raises no

31

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

specific, substantive challenge to the Optumrx delegation clause, so the Court must compel arbitration, leaving any arbitrability issues to the arbitrator. See Harris, 2019 WL 1714218, at *4 (stating that a challenge to a delegation provision "must be to the delegation provision specifically and not the arbitration agreement as a whole") (citation omitted).

For all of these reasons, the arbitrator must determine questions of arbitrability, including whether Waterfront's claims fall within the scope of the arbitration agreement and any question of unconscionability.

### V.    MOTION TO SEVER AND TRANSFER

Relying on two forum selection clauses, Express Scripts has moved to sever the claims against it and transfer them to the United States District Court for the Eastern District of Missouri. See ECF No. 80.  In the alternative, Express Scripts moves the Court to dismiss Waterfront's complaint because there is no private right of action.[3]

Waterfront and Express Scripts are parties to a "Provider Agreement."  The Provider Agreement includes a forum selection clause:

---

[3] Express Scripts previously filed a motion to dismiss for the same reason, before raising the issue of the forum selection clauses.  See ECF No. 50.

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

> All litigation between the parties arising out
> of or related in any way to the interpretation
> or performance of the Agreement shall be
> litigated in the U.S. District Court for the
> Eastern District of Missouri, or, as to those
> lawsuits to which the Federal Court lacks
> jurisdiction, before a court located in St.
> Louis County, Missouri.  The parties agree
> that Claims shall not be consolidated or
> coordinated in any action with the Claim of
> any other individual or entity . . . .

Provider Agreement, ECF No. 81-1, at § 7.12.  The Provider Agreement incorporates the Express Scripts Provider Manual.  See id. § 7.3 (stating that "[t]his Agreement, including its . . . Provider Manual, . . . constitutes the entire agreement of the parties with respect to the subject matter herein").  The Provider Agreement instructs Waterfront as to where the Provider Manual is accessible to it online.  See id. § 1.7.  The Provider Manual likewise contains a forum selection clause:

> All litigation between the parties arising out
> of or related in any way to the interpretation
> or performance of the Provider Agreement shall
> be litigated in the U.S. District Court for
> the Eastern District of Missouri, or, as to
> those lawsuits to which the Federal Court
> lacks jurisdiction, before a court located in
> St. Louis County, Missouri.  The parties agree
> that Claims shall not be consolidated or
> coordinated in any action with the Claim of
> any other individual or entity.

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

See Provider Manual, ECF No. 81-1, at 133.  The Court will refer to the Provider Agreement and Provider Manual together as the "Contract."

Under 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  "When the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause," and "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for Western Dist. of Texas, 571 U.S. 49, 62 (2013).  The Supreme Court explained,

> The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system. . . . For that reason, and because the overarching consideration under § 1404(a) is whether transfer would promote the interest of justice, a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.

Id. at 63  (citation and internal quotation marks omitted). Waterfront challenges the forum-selection clauses by arguing that

34

WATERFRONT V. OPTUMRX ET AL.                                    1:25-CV-29

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

Express Scripts has dominant bargaining power over Waterfront, that they deprive Waterfront of its day in Court, and that they are overwhelmingly unfair. These arguments have no merit.

**A.    The forum selection clauses apply to this dispute.**

The forum selection clauses apply to "[a]ll litigation between the parties arising out of or related in any way to the interpretation or performance of the" respective agreement. Provider Agreement, ECF No. 81-1, at § 7.12; Provider Manual, ECF No. 81-1, at 133. Waterfront's entire relationship with Express Scripts arises from the Contract, pursuant to which Waterfront agreed to participate in Express Scripts's pharmacy network under specific payment terms and other terms and conditions. Waterfront acknowledges that its claims are related to the performance of the Contract, as it alleges that Express Scripts uses its Contract to pay Waterfront less than required under West Virginia law. Because the Contract governs the terms of payment between Waterfront and Express Scripts, Waterfront's claim — that the Act requires it to be paid more — is related to that Contract.

**B.    The forum selection clauses are dispositive under 28 U.S.C. § 1404(a).**

A forum selection clause adjusts this Court's analysis on a motion to transfer under § 1404(a). Though in "the typical case not involving a forum-selection clause, a district court

35

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

considering a § 1404(a) motion" evaluates the convenience of the parties and other "private interest" factors, the "calculus changes" in the face of a forum selection clause in several ways. Atlantic Marine, 571 U.S. at 62–63. "First, the plaintiff's choice of forum merits no weight." Id. "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. . . . A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." Id. at 64.

Mandatory forum selection clauses have a "presumption of enforceability." BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 470 (4th Cir. 2018). "A mandatory forum selection clause is 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" Sauvageot v. State Farm Mut. Auto. Ins. Co., No. 5:11cv13, 2011 WL 2680508, at *2 (N.D.W. Va. July 8, 2011) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)). "In order to avoid enforcement of a forum-selection clause, the challenging party must make 'a strong showing that the clause should be set aside.'" Adkins v. Deangelo Brothers, LLC, No. 3:15-13151, 2016 WL 3982529,

36

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

### MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER AND TRANSFER, AND DISMISSING CASE

at *3 (S.D.W. Va. July 22, 2016) (citing <u>M/S Bremen</u>, 407 U.S. at 15).

Waterfront and Express Scripts contractually agreed that they would litigate their disputes in the Eastern District of Missouri. This forum selection must be given "controlling weight in all but the most exceptional circumstances." <u>Atlantic Marine</u>, 571 U.S. at 51 (citation omitted). Here, Waterfront does not establish that "exceptional" circumstances preclude enforcement of the agreement.

> **C.** **Waterfront cannot meet its burden to overcome the presumption that the forum selection clauses are valid and should be enforced.**

"[A]s the party defying the forum-selection clause," Waterfront bears the burden of "establishing that transfer to the forum for which the parties bargained is unwarranted." <u>Id.</u> at 63. This requires that "the party acting in violation of the forum selection clause . . . show[] that public-interest factors overwhelmingly disfavor a transfer." <u>Id.</u> at 67. Forum selection clauses are only unreasonable if a plaintiff establishes the following:

> (1) their formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would

WATERFRONT V. OPTUMRX ET AL.                          1:25-CV-29

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

> contravene a strong public policy of the forum
> state.

Sauvageot, 2011 WL 2680508, at *2 (citations omitted).

First, there is no indication that the forum selection clauses were induced by fraud or overreaching. Waterfront's allegation that the contract itself is "adhesive" is insufficient.  See Turfworthy, LLC v. Dr. Karl Wetekam & Co. KG, 26 F. Supp. 3d 496, 508 (M.D.N.C. 2014) ("[A]n inability or failure to negotiate concerning the disputed clause does not establish 'overreaching' by the drafter.") (citations omitted).

Second, Waterfront cannot show that it will be deprived of its day in court.  To satisfy this factor, "the inquiry is not whether [plaintiff] will be deprived of [its] day in [its] preferred forum, but whether [it] will be deprived of [its] day in any forum because of inconvenience or unfairness."  Brooks-Williams v. Keybank, No. WDQ-15-559, 2015 WL 9255327, at *6 (D. Md. Dec. 17, 2015) (emphasis and citation omitted).  The Eastern District of Missouri is not an unreasonable or illogical forum, especially given that Express Scripts has its principal place of business in Missouri.  See Am. Compl., ECF No. 76, at ¶ 3; see also Sheldon v. Hart, No. 5:09cv51, 2010 WL 114007, at *6 (N.D.W. Va. Jan. 8, 2010) (noting that forum selection clause in Germany

WATERFRONT V. OPTUMRX ET AL.                                1:25-CV-29

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

was not unreasonable where contracting party's principal place of business is in Germany).

Third, Waterfront cannot show that the Missouri forum will deprive Waterfront of a remedy, to the extent it is entitled to one. Federal courts sitting in diversity regularly apply other states' laws, and there is no reason that a federal court sitting in Missouri cannot do so. See Sharpe v. Ally Fin., Inc., No. 3:17cv189-GCM, 2017 WL 5078900, at *3 (W.D.N.C. Nov. 3, 2017) (enforcing forum selection clause where "Plaintiff has not shown how prosecuting this case in [selected forum] would deprive her of a remedy"); Brooks-Williams, 2015 WL 9255327, at *6 (enforcing forum selection clause where plaintiff "provides no authority for her apparent proposition that an Ohio court would decline to hear her Maryland claims").

Fourth, the enforcement of the forum selection clauses would not contravene a strong public policy of the forum state. "In West Virginia, forum selection clauses are not contrary to public policy." Sauvageot, 2011 WL 2680508, at *3 (citation and internal quotation marks omitted). Rather, "[i]n all but the most unusual cases, . . . the interest of justice is served by holding the parties to their bargain." Greenbrier Hotel Corp. v. Carter Bank & Trust, No. 5:23-cv-00731, 2024 WL 1766653, at *6 (S.D.W. Va.

**WATERFRONT V. OPTUMRX ET AL.**                                    **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

Apr. 24, 2024) (citation and internal quotation marks omitted). Further, Missouri "has an interest in deciding a controversy involving a corporate defendant located there," and "courts routinely transfer suits alleging state law claims to courts in other states." Brooks-Williams, 2015 WL 9255327, at *8.

To the extent Waterfront argues that the prospective waiver doctrine applies, the Court disagrees. The prospective waiver doctrine originated when the Supreme Court wrote in a footnote, "[I]n the event the choice-of-forum and choice-of-law clause operated in tandem as a prospective waiver of a party's right to pursue statutory remedies . . . , we would have little hesitation in condemning the agreement as against public policy." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 n.19 (1985). Here, we do not have a complete waiver of statutory remedies. Rather, the forum-selection clauses merely designate the forum, which is permissible.

In sum, due to the forum selection clauses, Waterfront cannot maintain its claims against Express Scripts in this Court. Waterfront's claims against Express Scripts must be transferred to the Eastern District of Missouri.

**WATERFRONT V. OPTUMRX ET AL.**                                         **1:25-CV-29**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

### D.   Severance

Rule 21 of the Federal Rules of Civil Procedure allows the Court "[o]n motion or on its own . . . [to] sever any claim against a party." Fed. R. Civ. P. 21.  The district court has "broad discretion" in determining whether to sever a claim under Rule 21. See, e.g., Rice v. Sunrise Express, Inc., 209 F.3d 1008, 1016 (7th Cir. 2000) (citations omitted).  Here, to effectuate the transfer of the claims against Express Scripts to Eastern District Missouri, the Court finds that severance is appropriate.

### VI.   CONCLUSION

For the reasons discussed above, Express Scripts's motion to sever and transfer is **GRANTED** [ECF No. 80].  The claims against Express Scripts are **SEVERED** and **TRANSFERRED** to the United States District Court for the Eastern District of Missouri.  The motions to compel arbitration are **GRANTED** [ECF Nos. 39, 45, 89, 90].  The parties (Waterfront, Caremark, and Optumrx) **SHALL** arbitrate this matter.  This case is **DISMISSED** and **STRICKEN** from the Court's active docket.  See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").  All other pending motions are **TERMINATED** [ECF Nos. 31, 50].

WATERFRONT V. OPTUMRX ET AL.                                    1:25-CV-29

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
TO COMPEL ARBITRATION, GRANTING MOTION TO SEVER
AND TRANSFER, AND DISMISSING CASE**

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record and the United States District Court for the Eastern District of Missouri.

DATED: March 31, 2026

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

42